SNOW *v.* UNITED STATES.

Under the organic act of September 9th, 1850, organizing the Territory of Utah, the attorney-general of the Territory, elected by the legislature thereof, and not the district attorney of the United States, appointed by the President, is entitled to prosecute persons accused of offences against the laws of the Territory.

ERROR to the Supreme Court for the Territory of Utah; the case being thus:

By the organic act, passed September 9th, 1850, establishing the Territory of Utah, it was enacted:

"SECTION 6. The legislative power shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of this act."

By the ninth section, the judicial power was vested in a supreme court, district courts, probate courts, and justices of the peace, whose jurisdiction was to be limited by law,

*provided*, that justices should not try land titles, nor cases exceeding $100 in amount; and that the Supreme and District Courts should possess chancery as well as common-law jurisdiction. Each District Court was invested with the same jurisdiction in cases arising under the Constitution and laws of the United States as is vested in the Circuit and District Courts of the United States; and the first six days in each term were appropriated to such cases.

Another section thus enacted:

"An attorney-general shall be elected by the joint vote of the legislative assembly, whose term of office shall be one year, unless sooner removed by the legislative assembly, or until his successor is elected and qualified. It shall be the duty of the attorney-general to attend to all legal business on the part of the Territory before the courts where the Territory is a party, *and prosecute individuals accused of crime,* in the judicial district in which he keeps his office, *in cases arising under the laws of the Territory,* and such other duties as pertain to his office."

Another section provided for the election of *district* attorneys, whose duty it was made to "attend to legal business before the courts in their respective districts where the Territory is a party, prosecute individuals accused of crimes in cases arising under the laws of the Territory, and do such other duties as pertain to their office."

Then, following all, was:

"SECTION 10. There shall be appointed an attorney for said Territory, who shall continue in office for four years, unless sooner removed by the President, and who shall receive the same fees and salary as the attorney of the United States for the present Territory of Oregon. There shall also be a marshal."

The marshal's duties were defined, being declared to be to execute all process issuing from the courts constituted by the act, when exercising their jurisdiction as Circuit and District Courts of the United States. But about the duties of the district attorney of the United States, to be appointed, as above mentioned, nothing at all was said.

In this state of things the legislative assembly, by joint

vote, on the 19th of January, 1869, elected Zerubbabel Snow, "attorney-general of the Territory," and on the 3d of April, 1870, the President of the United States appointed C. H. Hempstead, to be " the attorney of the United States" for the same Territory.

Hereupon, Mr. Snow having undertaken to prosecute in one of the District Courts of the Territory certain offenders " against the laws of said Territory," a *quo warranto* was issued by the United States on the relation of Mr. Hempstead against him ; the purpose of the writ being to have it. judicially settled which of the two persons,—whether the attorney of the United States for the said Territory, appointed by the President, or " the attorney-general of the Territory," elected by its legislature,—was entitled to prosecute in Utah persons accused of offences against the laws of the Territory.

The Supreme Court of the Territory, assuming that the Supreme Court and the District Courts of Utah were courts of the United States, were of the opinion that the attorney of the United States was the proper person; and adjudged accordingly.

The attorney-general of Utah thereupon brought the case here.

*Messrs. C. J. Hillyer and T. Fitch, on his behalf*, referred to *Clinton* v. *Englebrecht*,* in which this court decided that the Supreme Court and the District Courts of the Territory were not courts of the United States, but legislative courts of the Territory. The base, therefore, on which the Supreme Court of the Territory rested its judgment being removed, the judgment, they argued, fell also.

*Mr. G. H. Williams, Attorney-General, and Mr. C. H. Hill, Assistant Attorney-General, contra,* submitted the case.

Mr. Justice BRADLEY delivered the opinion of the court.

The government of the Territories of the United States

* 13 Wallace, 434.

belongs, primarily, to Congress; and secondarily, to such agencies as Congress may establish for that purpose. During the term of their pupilage as Territories, they are mere dependencies of the United States. Their people do not constitute a sovereign power. All political authority exercised therein is derived from the General Government.

It is, indeed, the practice of the government to invest these dependencies with a limited power of self-government as soon as they have sufficient population for the purpose. The extent of the power thus granted depends entirely upon the organic act of Congress in each case, and is at all times subject to such alterations as Congress may see fit to adopt.

The organic act establishing the Territorial government of Utah constituted a governor, a legislative assembly, and certain courts, and judicial and executive officers. Amongst the latter are an attorney for the Territory and a marshal.

By the sixth section of the act, it is enacted that the legislative power shall extend to all rightful subjects of legislation consistent with the Constitution of the United States and the provisions of that act. By the ninth section, it is enacted that the judicial power shall be vested in a supreme court, district courts, probate courts, and justices of the peace, whose jurisdiction shall be limited by law; *provided*, that justices shall not try land titles, nor cases exceeding one hundred dollars in amount; and that the supreme and district courts shall possess chancery as well as common-law jurisdiction; and each of the district courts is invested with the same jurisdiction in cases arising under the Constitution and laws of the United States as is vested in the circuit and district courts of the United States; and the first six days in each term are appropriated to such cases.

The duties of the attorney are not specified in the act. The marshal is required to execute all processes issuing from said courts when exercising their jurisdiction as circuit and district courts of the United States.

This recital shows that the business of these courts, when acting as circuit and district courts of the United States, is to be kept distinct from their business as ordinary courts

of the Territory; and gives countenance to the idea upon which the Territorial legislature seems to have acted in appointing separate executive officers for attending the courts when sitting as Territorial courts.  By an act of that legislature, passed March 3d, 1852, it is, amongst other things, provided that an attorney-general shall be elected by the legislative assembly to attend to all legal business on the part of the Territory before the courts where the Territory is a party, and to prosecute individuals accused of crime in the judicial district in which he shall keep his office, in cases arising under the laws of the Territory; and that for the other districts, district attorneys shall be elected in like manner with like duties.  This law, it is understood, has always been acted upon until the recent decision of the Supreme Court of Utah, denying its validity.  Similar laws have been passed and acted upon in other Territories, organized under similar organic acts.  The attorney appointed by the President for the Territory has been accustomed to attend to the business of the General Government, the same as is done by United States district attorneys in the several States; and the attorney-general and district attorneys of the Territory have attended to the business of the latter, and prosecuted crimes committed against the Territorial laws.

It must be confessed that this practice exhibits somewhat of an anomaly.  Strictly speaking, there is no sovereignty in a Territory of the United States but that of the United States itself.  Crimes committed therein are committed against the government and dignity of the United States. It would seem that indictments and writs should regularly be in the name of the United States, and that the attorney of the United States was the proper officer to prosecute all offences.  But the practice has been otherwise, not only in Utah, but in other Territories organized upon the same type.  The question is whether this practice is legal; or, in other words, whether the act of the Territorial legislature was authorized by the organic act.  If it was, the plaintiff in error in this case was erroneously ousted from perform-

ing the duties of his office of attorney-general of the Territory.

The power given to the legislature is extremely broad. It extends to all rightful subjects of legislation consistent with the Constitution and the organic act itself. And there seems to be nothing in either of these instruments which directly conflicts with the Territorial law. If there is any inconsistency at all, it is in that part of the organic act which provides for the appointment by the President of an attorney for the Territory. But is that necessarily an inconsistency? The proper business of that attorney may be regarded as relating to cases in which the government of the United States is concerned. The analogous case of the marshal, and the separation of the business of the courts as to Government and Territorial cases, seem to give some countenance o this idea. At all events, it has sufficient basis for its support to establish the conclusion that there is no necessary conflict between the organic and the Territorial laws. The organic act is susceptible of a construction that will avoid such conflict. And that construction is supported by long usage in this and other Territories. Under these circumstances it is the duty of the court to adopt it, and to declare the Territorial act valid. In any event, no great inconvenience can arise, because the entire matter is subject to the control and regulation of Congress.

JUDGMENT REVERSED.