12]        JANUARY TERM, 1925.        161

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

HIGHWAY TRAILER COMPANY, Respondent, vs. JANESVILLE
ELECTRIC COMPANY, imp., Appellant.

*April 9—May 12, 1925.*

*Electricity: Furnishing power to municipality for fire protection:
    Liability of city in case of failure of water pressure: Of
    electric company: Liability in case of interference with water
    system: What constitutes interference: Failure or inadequacy
    of equipment: Statutory liability of power company: Law of
    the case.*

1. In the creation and operation of a waterworks system for pro-
   tection against fire and for other uses relating to the public
   health, a municipality is exercising a governmental function,
   and is not liable to its citizens for want of ordinary care on
   the part of its agents in protecting property from fire.  p. 165.
2. When a municipality makes a contract with a water company
   whereby it agrees to furnish water for the extinguishment of
   fires, a private citizen who suffers loss by fire through failure
   of the water company to fulfil the contract has no right of
   action against it.  p. 165.
3. An electric power company is required to use due care to the
   public generally, without regard to contractual relations, and
   such care should be commensurate with the danger incident
   to the control of so dangerous an agency; but the liability of
   the defendant electric company, which was under contract
   with a city to furnish current for fire protection, for failure
   to furnish current during a fire at plaintiff's factory, is not
   affected by the fact that plaintiff was a customer of defendant.
   p. 176.
4. The decision of this court on demurrer on a former appeal is
   the law of the case on a subsequent appeal.  p. 176.
5. The evidence in this case is *held* not to show that the failure of
   the electric company, under contract with the city to furnish
   power for its water supply, to install and maintain a pole-top
   switch near plaintiff's plant, and to quickly restore power
   service after its suspension while plaintiff's plant was burning,
   constituted an interference with the service being rendered by
   the city to the plaintiff in extinguishing the fire,—the word
   "interfere" meaning to disarrange, disturb, or hinder.  p. 175.
6. The meaning of a statute which imposes new and very onerous
   responsibilities, not recognized by the common law, upon indi-
   viduals and corporations, should be very plain, and should not
   depend on implication, nor be helped out by the interpolation
   of words or phrases.  p. 179.

7. Sub. (4), sec. 180.22, Stats., relating to the liability of persons operating telegraph, telephone, or power-transmission lines or heat systems for public purposes, deals with power-transmission companies and the furnishing of power to their patrons for public purposes, and does not create any new liability in favor of persons having no connection with such service. p. 179.

APPEAL from a judgment of the circuit court for Rock county: GEORGE GRIMM, Circuit Judge. *Reversed.*

The plaintiff company owned a large manufacturing plant in the city of Edgerton, Wisconsin. The defendant company operated an electric power plant in the city of Janesville, Wisconsin, and furnished electric current to the city and inhabitants of Edgerton for light and power purposes. The plaintiff obtained from the defendant the electric current with which it operated the various motors in its manufacturing plant, and the city of Edgerton obtained electric power from the same transmission line with which to operate the electric-driven water pump installed by the fire department in May, 1921.

About 12:45 a. m. on July 4, 1921, a fire was discovered in the north end of the plaintiff's large factory. By one o'clock the firemen were directing a stream of water upon the burning structure, the pressure in the stand-pipe at this time being maintained by the electric-driven pump. At about 1:15 a. m. the lights in the city went out and the electric pump ceased operation. Blakesley, the resident agent of the defendant company, saw the lights go out and at once called the central station of the defendant company at Janesville upon its private wire and inquired the reason for the failure of the power. The defendant's agent at the central station reported that the circuit breaker for the Edgerton transmission line was out and that although closed three or four times it would not remain in. From this information Blakesley concluded that there was a short circuit somewhere in the burning factory and ordered the central station to keep the circuit breaker out for repairs until notified.

Blakesley then found Fessenden, a lineman, near the scene of the fire, and sent him in an automobile to obtain the necessary tools, which were in the defendant company's truck at Fessenden's home about a mile away. When Fessenden returned with the necessary equipment he climbed one of the poles on the primary transmission line between the pumping station and the burning factory, and cut the wires leading towards the *Highway Trailer* plant and fastened them to the insulators. As soon as this was completed Blakesley called the central station at Janesville and ordered the circuit breaker to be thrown in, and at once the lights came on in the streets of Edgerton and the electric power was available for the operation of the electric pump. A period of forty-five minutes elapsed between the time when the lights first went out and the time when the current was available again.

The cause of the failure of the electric current on the night in question was not determined by the jury. The defendant contended that the circuit breaker was thrown out because of a short circuit in the burning factory, and offered testimony to the effect that the morning following the fire some of the wires in the factory were found welded to the steam-pipes. The plaintiff offered the testimony of several witnesses to the effect that the wires were above the pipes so that the pipes could not have fallen upon the wires, and an expert witness testified that the metals in question could not fuse under the circumstances here involved. The defendant further contended that the fact that as soon as the wires to the burning building were cut the electric power was available, and the fact that the next morning when the wires were spliced again the current was available even in the *Highway Trailer* plant without further repairs, conclusively showed that the trouble was caused by a short circuit in the factory. The jury, however, found that it was not a short circuit in the service wires of the plaintiff company that caused the circuit breaker at Janesville to be

164     SUPREME COURT OF WISCONSIN. [MAY

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

thrown out. Moreover, the jury also found that the interruption of the electric current was not caused by any negligent act of the defendant's agent, Blakesley.

The jury did find, however, that the agents of the defendant company were guilty of negligence in the restoration of the electric current after it had been interrupted. The call to Janesville was first made about 1:25 a. m., according to the central station employee who received the call, and the lineman, Fessenden, was sent for the necessary tools immediately afterward. It is alleged by the plaintiff that the tools should not have been kept at the home of the employee but rather at the substation, which happened to be nearer the burning factory. The agents of the defendant company testified that it was customary to keep the tools in the defendant's truck, but that the truck was left at Fessenden's home during the summer months. There was also some conflicting evidence as to whether the wires might not have been cut with the current still in them and thus saved time in the restoration of the current.

The jury further found that both parties were negligent in failing to have proper safety appliances and modern equipment. The defendant was declared to have proximately caused the loss by its failure to have a pole-top switch on the pole where the secondary wires from the factory joined the primary transmission line. However, the failure of the plaintiff to have the proper fuses or switches in its factory was declared by the jury not to have contributed to the loss of the factory nor to have caused the interruption of the electric current.

The jury also decided from the conflicting evidence offered by the parties to this action that the water pressure dropped after the cessation of the electric current and that such lowering of the water pressure was the proximate cause for part of the loss, and that damages were suffered in the sum of $47,703.49. Judgment was rendered for the plaintiff on this verdict, and this appeal is brought on the grounds that

on the facts as found by the jury and as established by the evidence of the physical facts in the case no cause of action has been established against the *Janesville Electric Company*.

For the appellant there were briefs by *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, attorneys, and *E. J. B. Schubring* of Madison, of counsel, and oral argument by *Mr. Otto A. Oestreich* and *Mr. Schubring*.

For the respondent there was a brief by *Olin & Butler*, and oral argument by *Harry L. Butler* and *H. H. Thomas*, all of Madison.

JONES, J. It has long been the rule in this state and in most jurisdictions that in the creation and operation of a waterworks system for protection against fire and other uses relating to the public health a municipality is exercising a governmental function and is not liable to its citizens for want of ordinary care on the part of its agents in protecting property from fire. Some of the reasons for this rule were stated by Mr. Chief Justice DIXON in an early case in this state, and are:

"That the corporation is engaged in the performance of a public service, in which it has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity, but which it is bound to see performed in pursuance of a duty imposed by law for the general welfare of the inhabitants or of the community; that the members of the fire department, although appointed by the city corporation, are not, when acting in the discharge of their duties, servants or agents in the employment of the city, for whose conduct the city can be held liable; but they act rather as public officers, or officers of the city charged with a public service, for whose negligence or misconduct in the discharge of official duty no action will lie against the city unless expressly given; and hence the maxim *respondeat superior* has no application." *Hayes v. Oshkosh*, 33 Wis. 314.

It is also the rule, sustained by the great weight of authority, that when a municipality makes a contract with a water

166    SUPREME COURT OF WISCONSIN.    [May

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

company whereby the company agrees to furnish water for the extinguishment of fires, a private citizen who suffers loss by fire through the failure to fulfil the contract has no right of action against the company. Various reasons have been assigned for this rule. In many of the decisions it is said there is no privity between the water company and the inhabitant; that the contract deprives the citizen of no right and creates no new right, since he could maintain no action against the municipality for its negligence in failing to furnish fire protection. It is given as a reason in other cases that when, for convenience and the best interests of the community, a city procures a private company to furnish a water supply, such company is thereby made the agent of the city in the performance of a governmental duty and there should be no higher liability on the agent than on the principal. Other reasons assigned are that to impose liability in such cases on the private company would make it liable to be sued by many persons when it has agreed to become liable only to the city; that it would place such enormous responsibilities on water companies in the event of large conflagrations that they would be unwilling to agree with cities to furnish water supply, at least without greatly increasing the compensation to be paid for service by the public generally. For these and other reasons it is the prevailing rule that a citizen or taxpayer has no such direct interest in a contract between a municipality and a private corporation for supplying water as to authorize an action either on the contract or in tort for failure to furnish water for protection against fire.

The rule which generally obtains in other jurisdictions, and in the supreme court of the United States in the case of *German Alliance Ins. Co. v. Home Water Supply Co.* 226 U. S. 220, 33 Sup. Ct. 32, was adopted by this court in the case of *Britton v. Green Bay & Ft. H. W. W. Co.* 81 Wis. 48, 51 N. W. 84, a case often quoted and cited in other states. Counsel for the plaintiff frankly say that their case

does not depend on the breach of any contractual duty to the city, and that the mere breach by the defendant of its contract with the city would not afford to the plaintiff a right of action. They base their claim wholly on acts and omissions of the defendant alleged to be negligent and tortious.

Before May 17, 1921, the city of Edgerton had caused its water to be pumped by means of two steam pumps owned and operated by the city. On or about that date the electric pump was installed. Perhaps the most important fact relied on as establishing actionable negligence was the failure of the defendant to provide a pole-top switch or other device for disconnecting the plaintiff's factory from the transmission line serving the electric pump, to the end that a fire at the factory would not interrupt the current to the electric pump. The origin of the fire was unknown, and there is no claim that it was caused by any faulty construction of the electric system or any negligence of the defendant. The evidence shows that if a pole-top switch had been maintained the disconnection referred to could have been accomplished more quickly than by the method of cutting the wires as related in the statement of facts.

It is argued that before May, 1921, the city was ready and willing to furnish fire protection to the inhabitants, and that when the defendant undertook to perform that duty without installing the disconnecting device it interfered with and impaired the continuity of the fire service. It is further contended that there was actionable negligence in failing to restore the power service more promptly after its interruption. A large amount of evidence was produced relating to the lack of a disconnecting switch, the manner of cutting the wires, the mode and place of keeping the appliances to be used on such occasions, and generally on the question whether Blakesley and Fessenden acted diligently or not after discovering the interruption of the current. As already stated, the jury found that the interruption of the electric

168    SUPREME COURT OF WISCONSIN.  [May

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

current was not caused by the negligence of Blakesley and that he did not fail to exercise ordinary care in ordering the current kept off the line until he had cut the transmission wires leading to the plaintiff's transformers. But they did answer "Yes" to the question "Did any of the defendant's servants fail to exercise ordinary care in restoring the electric service to the pump after it had been interrupted?" and they found that such failure "to exercise care in restoring the electric service materially interfered with the rendition of fire-extinguishing service then being rendered by the city."

Relying on the acts and omissions of the defendant of the character above stated and on the findings of the jury, counsel for the plaintiff argue that the case comes within the principle laid down in the case of *Concordia F. Ins. Co. v. Simmons Co.* 167 Wis. 541, 168 N. W. 199. That case came to this court on demurrer. It appeared from the complaint that the city of Kenosha was maintaining a city waterworks system having an intake pipe conducting the water from Lake Michigan to a reservoir and to the pumping station. This water was used for the ordinary purposes, including fire protection. This intake pipe passed through the land of the defendant, and at a place known by it to be over the intake pipe the defendant negligently drove a foundation pile into the ground in such a manner that it pierced the intake pipe so as to render the waterworks system absolutely useless; that by reason of these facts, when the buildings in question were destroyed by fire there was no adequate pressure or fire protection and this was the proximate cause of the loss. In the decision the court cited the cases in this state and other states holding that there is no liability either as against the municipality which has assumed the function of protection against fires by installing a waterworks system and a fire department, or as against any corporation that may be under contract with such municipality to furnish such water supply, for any fire losses due to an entire lack or insufficient supply of water. It was said in

12]       JANUARY TERM, 1925.       169

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

that decision that it was not intended to in any way qualify or limit the rule, but it also said that:

"So long as the householder or inhabitant of the city is in the position to receive, and the municipality is ready and willing to continue such service, the person who interferes with such relationship between the municipality and its inhabitant and thereby causes injury to such householder or inhabitant must respond for such damages as may be directly traceable to his interference as a proximate cause. It is not for a person who has interfered with such existing right or privilege to say that it is a mere gratuity on the part of the municipality or that the municipality cannot be compelled to continue such service or be held responsible for failure to do so."

On the questions involved in this appeal the decision of this court in *Highway Trailer Co. v. Janesville Electric Co.* 178 Wis. 340, 190 N. W. 110, on the demurrer has a very important bearing. The complaint there under consideration set forth in general terms the contract between the city of Edgerton and the defendant company, a description of the plaintiff's property, the manner in which the current was conducted, modes of construction of the defendant's lines alleged to be negligent, stating that no adequate provision was made for cutting off the current to the plaintiff and others without at the same time cutting off the current supplying the electric pump. Then follow averments that while the electric pump was furnishing water under normal pressure and the members of the fire department had the fire under control, the defendant "negligently caused the electric current to be cut off on all of its lines supplying the city of Edgerton, the pumping plant belonging to said city, and all other consumers of electric current in said city, at the main plant belonging to the defendant in the city of Janesville. That said service was cut off at the plant at Janesville at about 1:15 a. m. of July 4, 1921, and the service was not restored until upwards of three fourths of an hour later, during which period the defendant, by its agents and ser-

170    SUPREME COURT OF WISCONSIN.    [MAY

Highway Trailer Co. v. Janesville Electric Co. 187. Wis. 161.

vants, cut all of the primary wires at one of the poles in the pole line above referred to, at a point on said line between plaintiff's plant and said pumping station. As plaintiff is informed and believes, there was no necessity or occasion for thus cutting the wires, or for suspending the service, while the fire was thus in progress, to the knowledge of defendant's local manager and servants, and particularly while said fire was under control, as hereinbefore alleged." This allegation is followed by others charging unnecessary delay in restoring the current.

In the brief of counsel for the plaintiff on the demurrer there was an elaborate argument of the proposition that the negligent and unnecessary cutting of the wires was an active interference by the agent of the defendant with the efforts of the fire department to extinguish the fire. In the opinion several grounds on which defendant's counsel relied to sustain the demurrer were stated, and the third was as follows:

"That inasmuch as defendant's connection with such service is based upon its contract with the city, the defendant also cannot be held liable though engaged in furnishing but part of the necessary service for.the purpose of extinguishing fires, just as water companies conducting the entire waterworks system under contract with the city have been held not liable for failure to keep up, according to contract, sufficient pressure in the water mains."

Referring to this proposition the court said:

"Upon the third point above stated and as urged here by the defendant, it was early held in this state, has been steadily adhered to since, and in accord with the general line of authority elsewhere, that a private corporation under contract with the city to furnish the water supply to such city and its inhabitants is not liable any more than is the city for damages arising from any breach of its contract obligations to furnish sufficient pressure in the water mains for fire protection. The question was squarely presented and fully discussed in *Britton v. Green Bay & Ft. H. W. W. Co.* 81 Wis. 48, 51 N. W. 84, where the damages sought to be re-

12] JANUARY TERM, 1925. 171

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

covered occurred by reason of the failure of the waterworks company to comply with a provision of its franchise with the city expressly requiring it to furnish water both for public and private use and for the putting out of fires, and in that case the distinction between the two kinds of services was pointed out."

Referring to what was decided in *Krom v. Antigo Gas Co.* 154 Wis. 528, 140 N. W. 41, 143 N. W. 163, the opinion continued:

"So the rule in the *Britton Case* was expressly reaffirmed and added weight given to it from the view the court then expressed as to the tremendous liabilities that would be now imposed upon such water companies which had assumed similar situations in evident reliance upon the rule announced in the *Britton Case.*"

It was then held that if the complaint must receive the construction contended for by the defendant's counsel, under the decisions referred to there could be no escape from the conclusion that the complaint stated no cause of action. The opinion concludes as follows:

"The plaintiff, however, contends that the complaint is grounded in tort and sufficiently shows an intentional, unnecessary, and negligent interference by defendant with the electric current then being furnished to and used by the city of Edgerton in its then present service in attempting to put out the fire on plaintiff's premises, and that for injuries proximately caused by such negligent present interference the defendant must be held liable as a tortfeasor, as much so as though it were an unquestioned interloper. And further, that the allegations in the complaint showing the contractual relationship between the city and the defendant are but explanatory of the situation and not controlling as to the respective rights and liabilities of the parties here.

"Under the rule binding us as to liberal constructions of pleadings, if two permissible constructions of a complaint are presented we are required to adopt that which will support a cause of action rather than another which would tend to show no legal ground for action. From the allegations of

172    SUPREME COURT OF WISCONSIN.  [MAY

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

this complaint as summarized in the statement of facts we can see sufficient to support the conclusion that there is alleged not merely a breach of defendant's contract with the city of Edgerton, but a breach of the obligation which the defendant, as well as all persons, owed to the plaintiff as well as to all other residents of the city to whom at any time the city of Edgerton might be in the immediate performance of its governmental function of fire protection, to not interfere with such gratuitous and voluntarily assumed function by the city, and that any breach of such implied duty so resting on defendant and all third persons by any intentional, unwarranted, or negligent interference with or caused interruption of such service may be considered a tort, and for the damages proximately caused thereby the person responsible for the same be held liable.

"We consider, therefore, that the allegations tending to show defendant's intentional, unnecessary interruption of and interference with the service being rendered to plaintiff by the city in extinguishing the fire brings this case squarely within the rule and doctrine stated in the case of *Concordia F. Ins. Co. v. Simmons Co.* 167 Wis. 541, 168 N. W. 199, where the defendant, while driving piles for a building on its own premises, broke into the main water supply pipes of the city of Kenosha and interrupted its service in fire protection.

"It follows, therefore, that it must be held that the complaint states a cause of action and the demurrer thereto should have been overruled." *Highway Trailer Co. v. Janesville Electric Co.* 178 Wis. 340, 190 N. W. 110.

At this time little claim if any is made by counsel for the plaintiff that there was any negligent act of Blakesley in suspending the power service, as on that issue the jury found for the defendant. The finding of the jury that Blakesley was not negligent in ordering the current kept off the line until he had cut the wires, as well as the other finding just mentioned, both seem very important as bearing on the question of whether there was negligent wrongful interference by the defendant with the action of the fire department in its effort to arrest the fire. Probably on account of

these findings counsel for the plaintiff do not now seem to rely on the conduct of the defendant's agents in cutting the wires and suspending for a time the power service; but they lay great stress on the failure to maintain a pole-top switch and the delay in restoring the service. The question thus arises whether the failure to install and maintain the pole-top switch and the failure to quickly restore the power service after its suspension constitute, within the meaning of the decision on the demurrer, an "intentional, unnecessary interruption of and interference with the service being rendered to plaintiff by the city in extinguishing the fire." Counsel for the plaintiff argue that the failure to install the pole-top switch and the delay in the restoration of the service constituted a continuing interference with the service theretofore enjoyed; that it was a direct, active, and tortious interference and a continuing menace within the meaning of the *Concordia Fire Insurance Co. Case, supra,* and the decision on the demurrer. Unless this proposition is sound it seems quite clear, from the decision on the demurrer, that the judgment cannot be sustained unless the statute later referred to imposes a liability upon the defendant.

While dealing with the subject of furnishing power for water supply to a city by an electric company, that decision on the demurrer follows the rule long established in this state. There is no intimation that there is any different rule whether the supply is furnished by an electric company or by an ordinary waterworks company. The entire scope of the opinion is to the contrary. It proceeds on the theory that in furnishing electric power to the city for fire protection the defendant was performing a governmental function and applies the law governing waterworks companies performing the same duty. A city enters into a contract with a waterworks company to pump and furnish water for use upon the streets and for fire protection and another city enters into a contract with an electric power company to

174    SUPREME COURT OF WISCONSIN.    [May

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

provide power for pumping and furnishing water for the same purposes. In both cases the municipality employs an agency to render a service which otherwise it would perform itself. In both cases it is a service which the municipality is under no legal obligation to undertake on its own account or through the instrumentality of others and which is governmental in its nature. In the two cases the means used to accomplish the result are somewhat different, but the end sought is the same, and the same general rules as to liability or non-liability for failing to furnish adequate pressure for fire protection ought to apply.

According to the *Concordia Fire Ins. Co. Case, supra,* and the decision on the demurrer in this case, if there is an intentional, unnecessary, and negligent interference with the service being rendered by the municipality in extinguishing the fire, such interference is a ground for action whether such interference is by a waterworks company or an electric power company, or some third person having no connection with either. It is argued that by failing to maintain a pole-top switch and the delay in restoring the power service there was such interference; that by undertaking to render the service without the pole-top switch the defendant interfered with the service previously performed by the city and which it was ready and willing to give. When the contract was made between the defendant and the city it is to be presumed that it was entered into by the city after due consideration of the advantages to be derived. The city bought an electric pump and made the contract by which the defendant instead of itself was to furnish pressure for the fire protection. It is not to be presumed that it was a mere temporary arrangement. It is fair to presume that the city was no longer willing to perform this service because it was supposed more practicable and economical to have it performed by another. Under such circumstances it can hardly be said that the defendant entered the field as an unwelcome guest, an invader, an interloper, or an interferer with the service then being

rendered. It seems hard to reconcile the claim of the plaintiff that there was an intentional and tortious interference with such service with the fact that all the matters now relied on were omissions rather than affirmative acts of the defendant and its agents. The negligence now relied upon is that the defendant in the construction and maintenance of its line, and its employees after the interruption of the current, failed to do certain things they ought to have done. In other words, such negligence is claimed as has been relied on in the many actions against waterworks companies for failing to furnish adequate pressure. In those cases such acts of negligence as follow have been charged: failure to provide suitable boilers, allowing pumping machinery and other appliances to become defective, allowing hydrants to become in such condition that they could not be opened, or allowing them to be frozen, permitting the hose to become inefficient; installing pipes too small to be efficient, and neglecting to install an electrical cut-off. Many other illustrations might be given in which negligence has been charged in suits brought by inhabitants against water companies for failure to furnish adequate pressure for fire protection, and in which it was held there could be no recovery. Such omissions to perform duties as these can hardly be said to be intentional and tortious interference with the furnishing of pressure for fire protection although they may constitute negligence. The meaning of the word "interfere" is thus given in 33 Corp. Jur. 267: "To interpose; to prevent some action; sometimes in a bad sense, to intermeddle; to check or hamper. In its broadest aspects the term 'interfere' bears the significance of 'disarrange,' 'disturb,' 'hinder.'"

It is claimed that the fact that the plaintiff was a customer of the defendant has some bearing on the question of liability. The duty which the defendant owed to the city of Edgerton and that which it owed to the plaintiff were entirely distinct. To the plaintiff as a user of current for commercial purposes it of course owed the duty to refrain

from any acts of negligence which might be the proximate cause of loss to the other contracting party. To the city it was bound to furnish pressure for fire protection, but to that contract the plaintiff was a stranger. If the defendant had so negligently installed or maintained its equipment as to cause the fire in question or otherwise to inflict damage in its business relation with the plaintiff, there would have been a common-law liability. It is also the duty of the electric power company to use due care to the public generally without regard to contractual relations, and that care should be commensurate to the danger incident to the control of so dangerous an agency. But we do not consider that the question of the defendant's liability or non-liability for temporary failure to furnish adequate pressure for fire protection to the city is in any way affected by the fact that the plaintiff was a customer of the defendant.

So far as legal questions are concerned, the decision of this court on the demurrer is the law of the case, and we conclude that there is no evidence to sustain the claim that there was such interference with the service in putting out the fire as was held necessary to a cause of action.

A question is now raised by counsel for the plaintiff which was not presented on the demurrer nor on the trial. It is claimed that under the provisions of sec. 180.22 of the Statutes the defendant is liable on the facts proven whether there was any common-law liability or not. Sub. (1) gives authority to telegraph and telephone corporations to construct their lines and deals with the connections of lines and the rates which may be charged. Sub. (2) prohibits the obstruction of the public use over highways, etc.; and sub. (3) provides for the removal of wires, etc., on the abandonment of such lines. Sub. (4) is as follows:

"Any person, association or corporation owning or operating any telegraph, telephone or power transmission line or heat system for public purposes doing business in this state shall be liable for all damages occasioned by the failure or negligence of their operators, servants or employees in re-

ceiving, copying, transmitting or delivering dispatches, messages or the furnishing of power to its patrons for public purposes."

Sub. (5) especially provides for damages to be collected from telegraph companies in case of negligence, including damages for mental anguish. Sub. (6) provides that no authority is given to telegraph, telephone, electric light, power, or heat transmission companies to destroy or injure ornamental trees or to damage buildings, fences, crops, live stock, or other property, except by consent of the owner, and concludes as follows: "any person or corporation violating any of the provisions of this section shall be liable to the person aggrieved in three times the actual damage sustained besides costs."

This statute had its origin in legislation dealing with telegraph companies, when the legislature enacted ch. 171 of the Laws of 1885, which provided that those operating telegraph lines in this state should be liable for all damages occasioned by the failure or negligence of their operators, servants, or employees in receiving, copying, transmitting, or delivering dispatches or messages. By ch. 319 of the Laws of 1901 provisions were made as to telephone companies and electric power companies, and the statute contained the same provisions as sub. (4) above quoted except that the words "heat systems" have since been added. It is argued by the plaintiff's counsel that it was the purpose of the statute to subject the companies named in the statute to liability for all negligence which should occasion damage and that the liability should run to all persons suffering damage. It is contended that although the language is inaptly used this is the clear meaning of the statute; that the real meaning of sub. (4) would be expressed if the closing words read as follows: "or delivering dispatches, messages, or *in the course of* the furnishing of power to its patrons for public purposes." It is claimed that it was the purpose of the statute to protect the public from the consequences of

negligence and especially from damages caused by unprotected lines. It has frequently been held that electric power companies are liable at common law for negligence in such cases where actionable negligence is shown. When the statute permitting damages for negligence in respect to telegraph messages existed in its original form and before the amendment allowing damages for mental anguish, the question arose whether under the broad language declaring liability "for all damages occasioned by the failure or negligence of their operators, servants or employees" there could be recovery for mental distress. It was held that the statute created no new element of damage. In the opinion by Mr. Justice WINSLOW it was said: "It seems clear to us that, had a radical change in the law relating to the kinds of suffering which should furnish a ground of damages been contemplated, the act would have expressed that intention in some unmistakable way. We see nothing in the law to indicate such intention." *Summerfield v. Western Union Tel. Co.* 87 Wis. 1, 57 N. W. 973. The case of *Fisher v. Western Union Tel. Co.* 119 Wis. 146, 96 N. W. 545, was another action brought under this statute, and it was claimed that under its broad language proof of proximate relation of the damages to the injury·complained of, where the loss was occasioned by neglect of the·defendant, was unnecessary. It was held that such a radical change in the legal relations of parties could not properly be read out of a statute unless its language was plain and unmistakable. In *Krom v. Antigo Gas Co.* 154 Wis. 528, 140 N. W. 41, 143 N. W. 163, the court construed sec. 196.64, then sec. 1797*m*—93. In this section it is provided in substance that if any public utility do or cause to be done anything prohibited or declared unlawful in secs. 196.01 to 197.10 inclusive, or omit to do anything required to be done by it, the utility should be liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained. Many acts and omissions were referred to in these sections between the two

12]            JANUARY TERM, 1925.            179

Highway Trailer Co. v. Janesville Electric Co. 187 Wis. 161.

mentioned. One of the legal issues involved was whether the statute showed any intention to change the rule in *Britton v. Green Bay & Ft. H. W. W. Co.* 81 Wis. 48, 51 N. W. 84, and it was held that the rule in that case was not changed by the statute. When it is claimed that a statute imposes new and very onerous responsibilities, not recognized by the common law, upon individuals and corporations, it should be shown that such meaning is very plain. It should not depend upon implication, nor be helped out by the interpolation of words or phrases. The reasons for this are well stated in the cases last cited. Whether the statute creates any new liabilities on the part of the power transmission companies to their patrons for public purposes it is not now necessary to decide. As we construe the statute, it is dealing with such companies and the furnishing of power to their patrons for public purposes, and we cannot accept the view that it creates any new liability in favor of persons having no connection with such service.

We have held in this decision that on the facts proven and the decision of this court on the demurrer there was no common-law liability to the plaintiff, and it is our opinion that none is created by the statute.

There is some discussion in the brief of the question whether the clause of the statute relating to treble damages applies to sub. (4) above quoted. If it does so apply, this would be an additional reason for the construction we have adopted. But it is not necessary to decide this question.

*By the Court.*—Judgment reversed, and the cause is remanded with instructions to dismiss the complaint.

OWEN, J., dissents.