George GILBERTSON, Appellant,

v.

CITY OF FAIRBANKS, a municipal corporation, Appellee.

Nos. 15567, 16017.

United States Court of Appeals
Ninth Circuit.

Jan. 12, 1959.

Rehearing Denied Feb. 18, 1959.

Edgar Paul Boyko, Los Angeles, Cal., Boyko, Talbot & Tulin, Anchorage, Alaska, for appellant.

Edward A. Merdes, William Boggess, Fairbanks, Alaska, George N. Sheild, San Francisco, Cal., for appellee.

Before HEALY, HAMLEY and JERTBERG, Circuit Judges.

JERTBERG, Circuit Judge.

On August 23, 1956, appellee (plaintiff below) filed a complaint against appellant (defendant below), hereinafter for convenience sometimes respectively referred to as plaintiff or defendant and as appellant or appellee, in which plaintiff sought judgment in the sum of $5,146.25, claimed to be the reasonable value of certain utilities furnished to defendant's hotel by plaintiff, in its capacity as the owner and operator of an electric, telephone, steam heat, and water utility system. Defendant's answer denied the material allegations of the complaint, and asserted a counterclaim in two counts for damages in the amount of $100,000. In the first count of the counterclaim, defendant alleges that on or about July 14, 1952, he was the owner and operator of a certain building known as the Pioneer Hotel, together with furniture and other effects contained therein; that the plaintiff was engaged in the business of furnishing electricity as a public utility to customers at Fairbanks, Alaska, including said hotel; that on or about said date a fire was started in said building, which said fire was brought under control and confined to a small portion of defendant's said building by various fire fighting agencies; that the pumps furnishing water used by said fire fighting agencies were operated on electric current furnished by plaintiff, and after said fire had been brought under control plain-

tiff, by its agents or employees, carelessly and negligently caused to be turned off the electric current being supplied to said water pumps, as a result of which the said fire fighting forces were deprived of water, whereby the said fire again went out of control, completely destroying defendant's said building, together with furniture and other effects, to the defendant's damage in the sum of $100,000.

The second count of the counterclaim is based upon a breach by plaintiff of an alleged contractual obligation on the part of plaintiff to furnish adequate fire protection for defendant's property, by reason of the payment of taxes.

On October 23, 1956, plaintiff filed a motion to dismiss both counts of the counterclaim on the ground of non-liability of the City of Fairbanks by reason of its municipal immunity from suit, as well as the statute of limitations. The district court entered an order dismissing both counts of said counterclaim on the ground of non-liability of the city from suit, but did not pass on the statute of limitations defense asserted by the city against the counterclaim because the trial court was of the opinion that dismissal on the first ground was dispositive of the counterclaim. The opinion of the trial court dismissing the counterclaim appears in 16 Alaska 590. Defendant appealed from said order to this Court, and the appeal was docketed as cause 15,567. On February 24th this Court, on its own motion, dismissed the appeal without prejudice on the ground that the order appealed from was not a final judgment because of noncompliance with the requirements of Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The opinion of this Court is reported in 253 F.2d 231.

Thereafter, the defendant filed in the district court his motion for rehearing, and to revise the opinion and order of dismissal, or, in the alternative, for entry of a final judgment of dismissal under Rule 54(b) of said Rules. The district court denied the motion for rehearing and entered on March 3, 1958, its final order and judgment of dismissal of both counts contained in defendant's counterclaim without leave to amend. In said order the district court made the finding required by Rule 54(b) to the effect that "there is no just reason for delay in entering final judgment."

The defendant appealed to this Court from the last mentioned final order and judgment. This cause was docketed in this Court as number 16,017, and thereafter this Court ordered the records on appeal in causes numbers 15,567 and 16,017 consolidated.

The specifications of error relied on by the defendant on the consolidated appeals, as summarized in appellant's brief, are as follows:

1. Where a municipal corporation operates both an electrical utility and a fire department and the electrical utility, through its agents or employees, tortiously interferes with operations of such fire department and other fire fighting agencies protecting the property of a private citizen, by the careless and negligent cutting off of electrical current which furnishes the needed power to pumps supplying water to such municipal and other fire fighting agencies, is the municipality liable to the property owner by virtue of its negligent operation of its proprietary electrical utility department and its tortious interference with processes of fire protection, or is such municipality immune from suit by virtue of the governmental status of its fire protection activities and those of other agencies, to whom both the water and, incidentally, the electricity so cut off was being furnished?

2. Should the District Court have submitted to the jury the issue of whether the alleged negligent and careless acts of the electrical utility or its agents constituted such intentional or tortious interference with the fire protection being rendered to appellant's property as to allow him to recover for the damages sustained?

3. Since cities in Alaska must derive any claimed immunity from the sovereign

which created them, namely, the United States, was their alleged legal irresponsibility lost when the United States waived its immunity from suit for like misconduct by its agents or employees, through enactment of the Federal Tort Claims Act, as recently interpreted by the Supreme Court of the United States?

4. If, as appellant believes, the decision of the District Court here appealed from was based squarely upon the issue of municipal immunity, no amendment of the counterclaim was necessary. However, if amendment be required for the purpose of alleging additional facts necessary to bring the pleadings within the precedents relied on by appellant, did the District Court abuse its discretion in refusing appellant's prayer for leave to amend?

We will consider these specifications of error ad seriatim. First, appellant contends that the district court erred in holding as a matter of law that the appellee was not liable for acts of negligence alleged in appellant's counterclaim because of appellee's municipal immunity from suit. The trial court stated that a municipality functions in a proprietary or corporate capacity in the operation of a public utility, such as the generation and distribution of electric power, and that a municipality is normally liable for damages resulting from the negligent operation of such public utility to the same extent as a private person or corporation engaged in such business. The trial court held, however, that the appellee, in providing the electrical energy which pumped the pumps which in turn provided the water to the fire fighting forces, was engaged in the performance of a

governmental function and, therefore, the appellee was not liable in damages to the appellant for any negligence of the appellee in failing to supply the electrical energy.

Under this specification of error, appellant contends that in furnishing electrical energy to the pumps which supplied the water to the fire fighting forces appellee was engaged in a proprietary function and is, therefore, liable to the appellant for damages caused by employees of appellee in the performance of that function.

■■ The law is well established in the Territory of Alaska, as it is elsewhere, that a municipality is not liable to suit for damages caused by the negligence of its police officers in performing a governmental function. Wilson v. Eberle, 15 Alaska 260, and cases therein cited. Fire fighting has always been considered a governmental function and municipal immunity from suit based upon negligence of the employees of the municipality while engaged in fire fighting has long been established and recognized.[1] Such immunity was impliedly recognized by the Territorial Legislature of Alaska.[2]

The prevailing view is that no municipal liability exists in the negligent failure to supply water for extinguishment of fire, even though the same water system might be used by the municipality in a proprietary way to furnish water to the general public. The essence of the charge against the municipality in such type of case is the municipality's failure to properly extinguish the fire, which is a governmental function.[3] This rule has

---

1. 18 McQuillin, Municipal Corporations, 3rd Ed., 1950, 366–371, Sec. 53.82, and cases cited. Cases collected at 9 A.L.R. 143, and supplemented in 33 A.L.R. 688 and 84 A.L.R. 514.

2. An Act of the Territorial Legislature of Alaska, Chapter 92, S.L.R. 1957, at page 128, A.C.L.A.Supp. § 40–14–1, provides that fire fighting organizations of Alaska, when engaged outside their home district, "have the same immunity and privilege as if performing the same [func-

tions] within their respective city, town, and incorporated area of the Territory."

3. United States v. City of Sault Ste. Marie, C.C.Mich.1905, 137 F. 258; Moch Co. v. Rensselaer Water Co., 1928, 247 N.Y. 160, 159 N.E. 896, 62 A.L.R. 1199; Steitz v. City of Beacon, 1945, 295 N.Y. 51, 64 N.E.2d 704, 163 A.L.R. 342; Yowell v. Lebanon Waterworks Co., 1934, 254 Ky. 345, 71 S.W.2d 658; Nashville Trust Co. v. City of Nashville, 1945, 182 Tenn. 545, 188 S.W.2d 342; City of Columbus v.

been applied even where the act of the city employee was wilfull and with full knowledge that the water which he turned off was being used for fire fighting. Miralago Corp. v. Village of Kenilworth, 1937, 290 Ill.App. 230, 7 N.E.2d 602.

■ On the other hand, it has generally been held that when a municipality engages in the business of a public utility, to-wit, providing electricity to the general public, it is acting in a proprietary or corporate capacity and, therefore, is subject to liability even if, incidentally, electricity is also supplied to the city for a governmental purpose.[4]

The appellant has called our attention to only one case, however, involving the failure to supply electrical energy to the fire fighting forces of a municipality. The case is Highway Trailer Co. v. Janesville Electric Co., 1922, 178 Wis. 340, 190 N.W. 110, 27 A.L.R. 1268. That case involved the liability of a private electric company which furnished power to the general public and which was under contract to the municipality to furnish electrical energy to operate the municipality's water pumps, the water from which was used for fire fighting purposes. The court held that if there is an intentional, unnecessary and negligent interference with the service being rendered by the municipality in extinguishing a fire, such interference is a ground for action, whether such interference is by a water company, an electric power company, or some third person having no connection with either. This opinion was based upon an appeal from the order of the trial court sustaining a demurrer to plaintiff's complaint. The Supreme Court of Wisconsin reversed the order of the trial court. On retrial of the case in the trial court, judgment on the merits

was entered in favor of plaintiff. The appeal from such judgment was considered by the Supreme Court of Wisconsin in Highway Trailer Co. v. Janesville Electric Co., 1925, 187 Wis. 161, 204 N. W. 773. In that opinion the court held that the plaintiff had failed to prove the necessary degree of interference to impose liability upon the electrical company, and in absence of a contractual obligation on the part of the electrical company to the plaintiff no liability could be fastened on the electrical company. The Janesville case and the Concordia Fire Insurance Co. v. Simmons, 1918, 167 Wis. 541, 168 N.W. 199,[5] on which the Janesville decisions rely, hold only that a private person who interferes with the fire fighting functions of a municipality, upon a proper showing, can be made liable to the injured party for such negligence. These cases are clearly distinguishable on their facts. To apply the rule enunciated in such cases to the facts of this case would require us to hold that a municipality loses its immunity by interfering with itself in the performance of a governmental function.

■ Various reasons have been assigned to explain or sustain the doctrine of municipal immunity. Municipal immunity from suit in the area of fire fighting has been most widely based upon the theory of strict sovereign immunity: A sovereign who makes the laws cannot be sued at law unless he provides a law for doing so.[6] A municipality when acting as an agent of the sovereign in performing governmental functions is likewise immune in the absence of statutory liability.

Another reason assigned for the doctrine of municipal immunity is based upon the principle that it would be a mis-

---

McIlwain, 1949, 205 Miss. 473, 38 So.2d 921, 18 McQuillin, Municipal Corporations, 3rd Ed. 1950, 433, Sec. 53.105.

4. Memphis Power & Light Co. v. City of Memphis, 1937, 172 Tenn. 346, 112 S.W. 2d 817; Lockhart v. Kansas City, 1943, 351 Mo. 1218, 175 S.W.2d 814; 19 A.L. R.2d at pages 346 and 347.

5. In which a private factory owner was liable for negligently breaking water mains in use for fire fighting with foundation piles.

6. Or as simply stated by Justice Brewer, "The creature cannot rule the creator". State of Kansas v. State of Colorado, 1906, 206 U.S. 46, 48, 83, 27 S.Ct. 655, 661, 51 L.Ed. 956, 969.

use of governmental funds to permit individual recovery without legislative control,[7] and on the reasoning that a municipality, being under no obligation to any individual to establish fire protection, is not liable when it fails to do so, or when the failure is due to its negligence, since such a failure does not give rise to a private cause of action. The benefit is for the community as a whole, not for any one individual.[8]

Another reason urged for the doctrine of municipal immunity to suit in the field of fire fighting is that the solvency of the municipality might be threatened or destroyed were it not for the existence of such immunity, and thereby render a municipality unable to provide functions without which an urban area could not exist.[9]

Successful fire fighting requires the combined efforts of the fire fighting forces, the furnishing of the water to such forces, and the supplying of the electric energy which pumps the water. The end service functions only if the intermediate services function. Successful fire fighting is a composite of all of these functions. The furnishing of electric energy to power the pumps cannot in law or logic be isolated from the furnishing of water to the fire fighting equipment or the activities of the fire fighting forces. We hold that under the allegations of the counterclaim the mantle of municipal immunity covers the activity of the City of Fairbanks which the counterclaim alleges was negligently performed. Whatever view one might take with respect to the soundness, fairness, or logic of the doctrine of municipal immunity, the doctrine in relation to immunity from suit for negligence growing out of the fire fighting activity of a municipality is too firmly embedded in the law to be changed by judicial fiat. If the doctrine is to be changed, relaxed, or modified, it should

be done by the appropriate branch of the government.

Under the second specification of error, appellant contends that the trial court should have submitted to the jury the question of whether the alleged negligent acts of the appellee or its agents constituted such intentional or tortious interference of the fire fighting protection being furnished to the appellant's property as to allow recovery for the damages alleged. Since we hold that the appellee is immune from suit under the allegations of the counterclaim, the trial court committed no error in refusing to submit to the jury the question raised under this specification.

Appellant's next specification of error is based upon the trial court's refusal to grant a re-hearing in order to apply the rule enunciated by the Supreme Court of the United States which was rendered subsequent to the trial court's opinion. The Supreme Court held in Rayonier, Inc. v. United States, supra, that the United States was liable under the Federal Tort Claims Act (28 U.S.C.A. § 1346) for the negligence of forest service employees in allowing a fire to start on government land in the State of Washington and failing to use due care to put the fire out. The appellant argues that the Federal Tort Claims Act, as interpreted by the Supreme Court in the Rayonier and other cases, imposes liability upon appellee under the first count of appellant's counterclaim. Appellant reasons that the cities of Alaska must derive any claimed immunity from the United States and, therefore, when the United States waived its immunity by the enactment of the Federal Tort Claims Act any claimed immunity of Alaska municipalities was likewise waived. In support of his argument, appellant cites the dictum of Indian Towing Co. v. United States, 1957, 350 U.S. 61, 76 S.Ct. 122,

7. Land v. Dollar, 1947, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209.

8. Stang v. City of Mill Valley, 1952, 38 Cal.2d 486, 240 P.2d 980.

9. See comments of the Supreme Court regarding the liability of a municipality as opposed to the liability of the federal government, in Rayonier, Inc. v. United States, 1957, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354.

125, 100 L.Ed. 48, which refers with approval to cases from the State of New York by which that state "has sought to emerge from the quagmire" created by the distinction between governmental and proprietary functions. From that statement, appellant asks us to follow Bernardine v. City of New York, 1945, 294 N.Y. 361, 62 N.E.2d 604, 161 A.L.R. 364, in which case it was held that a statute generally waiving the state's immunity from suit operates as a waiver of governmental immunity of its counties, towns, cities and villages from suit, since none of the subdivisions of the state has independent sovereignty. The relation of the cities of Alaska to the federal government is not the same as the relation of a city in New York to the State of New York. The Territory of Alaska intervenes between its cities and the United States. Therefore, the Territory is the sovereign to which its cities must look to determine their immunity.[10] True enough, the City of Fairbanks was created under Acts of the United States Congress.[11] The organic act, however, which created the Territory and the Territorial Legislature was enacted subsequent to the Acts of Congress which created the City of Fairbanks. The organic act granted general authority to the Territorial Legislature, with certain specified limitations. These limitations, however, did not limit the authority of the Territorial Legislature over the cities of Alaska.[12] The sovereignty of the Territory was also limited somewhat by the provision that its laws were subject to review and nullification by Congress.[13] This type of limitation has been held by the Supreme Court of the United States to be no different than the limitation of the sovereignty imposed on the several states of the United States by the Constitution.[14] Congress can supersede the sovereignty of a territory and its laws. Its intention to do so must be clearly expressed.[15] Congress has not done so in the Federal Tort Claims Act or by amendment of the organic act. The Territorial Legislature has not enacted any statute similar to the Federal Tort Claims Act. Therefore, appellant's argument falls of its own weight.

◼ Appellant's final specification of error is that, if appellant were required to amend his counterclaim to bring it within applicable principles of law, the court should have permitted him to do so, and that the trial court's refusal to do so constituted an abuse of discretion. The appellant did not indicate in any manner or in any particular how his counterclaim should be amended to bring his counterclaim within applicable principles of law. He offered no proposed amendment to the trial court. We are of the view that no amount of additional detail could so buttress the counterclaim of appellant as to state a claim for relief on the basis of the theories of law which appellant has advanced on this appeal. There was no abuse of discretion by the trial court under the facts or law applicable to this case.

The judgment of the trial court is affirmed.

---

10. Kawananakoa v. Polyblank, 1907, 205 U.S. 349, 27 S.Ct. 526, 51 L.Ed. 834; People of Puerto Rico v. Rosaly Y. Castillo, 1913, 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507; Crain v. Government of Guam, 9 Cir., 1952, 195 F.2d 414; Harris v. Municipality of St. Thomas and St. John, 3 Cir., 1944, 212 F.2d 323. Neither In the Matter of Lane, 1890, 135 U.S. 443, 10 S.Ct. 760, 34 L.Ed. 219, or Snow v. United States, 1873, 18 Wall. 317, 85 U.S. 317, 21 L.Ed. 784, cited by defendant as authority that the United States is the only sovereign, is in point, although containing general language to that effect, neither case involves facts calling for such a holding.

11. Act of June 6, 1900, Ch. 786, 31 Stat. 520, and the Act of April 28, 1904, Ch. 1778, 33 Stat. 529.

12. Act of Aug. 24, 1912, 37 Stat. 512, Sec. 3, 48 U.S.C.A. §§ 21, 23, 24.

13. Ibid. Sec. 20, 48 U.S.C.A. § 90.

14. Kawananakoa v. Polyblank, supra; followed in Crain v. Government of Guam, supra.

15. France v. Connor, 1896, 161 U.S. 65, 16 S.Ct. 497; 40 L.Ed. 619; Harris v. Municipality of St. Thomas and St. John, supra.