### FIRST STATE BANK OF THOMPSON FALLS v. UNITED STATES.
### No. 8473.

Circuit Court of Appeals, Ninth Circuit.
Sept. 21, 1937.

Murphy & Whitlock and J. C. Garlington, all of Missoula, Mont., for appellant.

John B. Tansil, U. S. Atty., and R. Lewis Brown, Asst. U. S. Atty., both of Butte, Mont., and Charles S. Brothers, of Missoula, Mont.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal by the defendant bank from a judgment rendered in favor of the United States in the sum of $1,163.28. This amount represents the cost of extinguishing a forest fire originating on land to which appellant held the record title. Liability is predicated upon section 2778.2, Revised Codes of Montana 1935:

"2778.2. *Liability for extinguishment of forest fires.* Any uncontrolled or spreading fire in forest material in the state of Montana, from May 1 to September 30, inclusive, is hereby declared a public nuisance. The person, firm, or corporation on whose property such fire exists or from whose property such fire spreads, is hereby made responsible, to the extent hereinafter set forth for its control and extinguishment. If the person, firm or corporation thus responsible, shall refuse, or neglect, or fail to take reasonable steps to control or extinguish it, the state forester, the United States or any organized and functioning forest protective association recognized by the state forester, may summarily abate such nuisance by controlling or extinguishing the fire, and the cost thereof may be recovered from such person, firm or corporation responsible for such fire by the state of Montana, or the United States, or the association, which extinguished or controlled it. If the person, firm or corporation shall fail to pay in full the total amount due within thirty (30) days after date of written demand for payment, such amount may be collected in an action for debt by the state, the United States, or the association which abated the nuisance.

"Provided, that when any person, firm or corporation has listed his lands with any such regularly organized and functioning forest protective association recognized by the state forester, or with the state forester or the United States forest service, it shall be considered that he has taken reasonable steps to control and extinguish fires as described in this section except such fires as may be the result of his negligent acts, conduct or operations."

The case was heard on an agreed statement of facts. From this statement it appears that the land to which defendant held legal title was a small plot adjoining lands of the government, the Cabinet National Forest in Montana; that the plot covered by defendant's title included forest and timber material; that it had never been listed with a forest protective association as provided for in the statute quoted.

Without fault or knowledge on the part of the defendant, fire broke out on the land on August 28, 1931. It was discovered at 3 o'clock in the afternoon, and one hour later was reported to an agent of the plaintiff, Supervisor Abbott of the Cabinet National Forest. He immediately dispatched men and equipment to the scene. Until September 7, 1931, plaintiff's employees fought the fire, until it was extinguished.

The defendant bank did not learn of the fire until the day after it broke out. It then took no steps to control or extinguish the blaze.

Whether, on these facts, a landowner is liable under the statute to reimburse the United States for its expense in extinguishing the fire, is one of the questions raised by the parties in this case.

134

But at the threshold of our inquiry is another question: Was the defendant bank, at the time of the fire, the owner of the property upon which the blaze originated, within the meaning of the statutory clause: "The person, firm, or corporation on whose property such fire exists or from whose property such fire spreads, is hereby made responsible."?

The agreed statement of facts sets forth that on December 7, 1927, the defendant bank agreed to sell, and one Marguerite T. Christie agreed to purchase, the land in controversy for the sum of $2,500, payable in installments. This contract was still executory at the date of the fire.

Under the contract, the vendor (defendant) was to retain title until the full amount of the purchase price was paid. That the vendee, Mrs. Christie, was entitled to possession of the premises during the term of the contract is shown by the provision of the contract governing default on the part of the vendee: "It is mutually understood and agreed by and between the parties of this Contract that thirty days is a reasonable and sufficient notice to be so given to said second party, in case of failure to perform any of the covenants on her part hereby made and entered into, and shall be sufficient to cancel all obligations hereunto on the part of the said first party, and fully reinvest it with all right, title and interest hereby agreed to be conveyed, and the party of the second part shall forfeit all payments made by her on this Contract, and all her right, title and interest in all buildings, fences or other improvements whatsoever, and such payments and improvements shall be retained by the said party of the first part in full satisfaction and in liquidation of all damages by it sustained, and it shall have the right to re-enter and take possession of the premises aforesaid."

■ It is the appellant's contention that, having contracted to sell the land to Mrs. Christie, it retained but the bare legal title, the entire beneficial ownership going to the vendee.

This contention is supported by the law of Montana as well as by the general rule in almost all jurisdictions.

■ Under the doctrine of equitable conversion, a contract of purchase and sale of real estate vests the entire beneficial interest in the land in the vendee. During the life of the contract, the vendor retains legal title only as security for the purchase price. The vendee's interest is a real interest, whereas that of the vendor is held to be a personal property interest in the purchase price.

That this is the law of Montana, as well as the law generally, is shown by the case of Kern v. Robertson, 92 Mont. 283, 288, 12 P.(2d) 565, 567:

"The authorities are in accord that an enforceable contract for the purchase and sale of real property passes to the purchaser the equitable and beneficial ownership thereof, leaving only the naked legal title in the seller, as trustee for the purchaser, and as security for the unpaid purchase price. If the purchaser dies while the contract is in force and effect, his interest passes to his heirs as real property. If the seller dies while the contract is in force and effect, his interest passes to his personal representative as personal property, and not to his heirs.

" 'Applying one of its fruitful principles, that what ought to be done is regarded as done, equity says that from the contract, even while yet executory, the vendee acquires a "real" right, a right of property in the land, which though lacking legal title, and therefore equitable only, is none the less the real, beneficial ownership, subject, however, to a lien of the vendor as security for the purchase price as long as that remains unpaid. This property in the land, upon the death of the vendee, descends to his heirs, or passes to his devisees, and is liable to the dower of his widow. The vendor still holds an equitable ownership of the purchase money; his property, as viewed by equity, is no longer real estate, in the land, but personal estate, in the price, and if he dies before payment, it goes to his administrators, and not to his heirs. In short, equity regards the two contracting parties as having changed positions, and the original estate of each as having been "converted", that of the vendee from personal into real property, and that of the vendor from real into personal property.' 1 Pomeroy's Eq.Jur.(4th Ed.) § 105, pp. 117, 118. See, also, § 368, p. 685, Id.; 3 Id. §§ 1159–1168, pp. 2744–2769. * * * The text is fully borne out by the authorities. Detroit Trust Co. v. Baker, 230 Mich. 551, 203 N.W. 154, 204 N.W. 773; * * * Colignon v. Artz [205 Wis. 51] 236 N.W. 585; Berndt v. Lusher, 40 Ohio App. 172, 178 N.E. 14; * * * Pinson v. Pinson, 150 S.C. 368, 148 S.E. 211; Taylor v. Interstate Inv. Co., 75 Wash.

490, 135 P. 240; Robinson v. Pierce, 278 Pa. 372, 123 A. 324."

█ Section 368 of Pomeroy's Equity Jurisprudence, which the Montana court cites and upon which it relies, points out a further incident of the doctrine, which may well be deemed controlling: "It follows, also, as a necessary consequence, that the vendee is entitled to any improvement or increment in the value of the land after the conclusion of the contract, and must himself bear any and all accidental injuries, losses, or wrongs done to the soil by the operations of nature, or by tortious third persons not acting under the vendor." Pomeroy, Eq.Jur.(4th Ed.) § 368, p. 688.

By contract, defendant's vendee, Mrs. Christie, had the right to possession of the property, at the time of the fire. Under the law, she had, in addition to the right of possession, the full equitable ownership of the land. The defendant held only a naked legal title, whose only function was to serve as security for the purchase price.

It is in this view that we must approach the interpretation of the statutory phrase, "on whose property such fire exists."

█ We are not aware of any direct construction of this phrase by the courts of Montana. In the absence of such guidance, we think it clear that the statute must intend to place the responsibility of guarding against fire upon the person whose ownership is nearest to the land.

On one side we have the vendor, whose essential interest is an interest in the purchase money; whose title in the land is nothing more than a security device to insure the payment of the moneys. On the other side is the vendee, who has the entire beneficial interest in the fee; who enjoys the right of possession; who is entitled to place improvements upon the estate; who stands to suffer the loss in the event of destruction of any of the realty by fire or otherwise.

Clearly, between these two parties, it is the vendee who is closest to the land; who is the more interested in its preservation; who is the better able to take the safeguarding steps contemplated by the statute.

Interpreting the statute in the light of its manifest purpose, to protect the state from the destructive holocausts to which her arid climate and her vast timber resources make her so liable, we are constrained to hold that, as between vendor and vendee, the statute places the responsibility to make reasonable effort to prevent the spread of fire upon the party enjoying the right of possession thereto, and the more interested in its preservation, because it is he, and not the vendor, who stands to lose in the event of its destruction by fire. The appellant's bare legal title, held as security, is not the "property," the owner of which is made responsible by the statute.

Reversed.