No. 85-241

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

DOROTHY L. SHARBONO,

        Plaintiff and Appellant,

   -vs-

THOMAS F. DARDEN and NORMA J.
DARDEN,

        Defendants and Respondents.

_____

APPEAL FROM:  District Court of the Fourth Judicial District,
           In and for the County of Missoula,
           The Honorable Jack L. Green, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Garnaas, Hall, Riley & Pinsoneault; J. Robert Riley,
           Christopher Daly argued, Missoula, Montana

      For Respondent:

           Datsopoulos, MacDonald & Lind; Christopher B.
           Swartley argued, Missoula, Montana

_____

                  Submitted:  October 30, 1985

                    Decided:  March 4, 1986

Filed: MAR 4 1986

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment issued by the District Court, Fourth Judicial District, Missoula County, Montana. After a bench trial, the Honorable Jack Green awarded plaintiff a judgment of $4,488.46 including certain interest amounts.

Plaintiff filed consolidated post-trial motions moving the court for an amended judgment in conformity with her proposed findings of fact and conclusions of law, or in the alternative, for a new trial under Rule 59(a) to set aside or modify the court's findings of fact and conclusions of law and judgment. An amended post-trial motion was filed setting forth with more particularity the grounds in support of the motions. The motions were denied. We affirm.

Plaintiff-appellant, Dorothy Sharbono, with her now deceased husband, L. G. Sharbono, purchased a five acre tract of land in Missoula County from J. Dean Roach, sometime after October, 1969. The land was conveyed by warranty deed. Roach had purchased a ten acre tract from Alex N. Ogilvie in October, 1969, on a contract for deed. These ten acres were part of a 160 acre tract which Ogilvie had acquired prior to 1964. The Federal Land Bank of Spokane, Washington, held a mortgage on the 160 acres, which was recorded in Missoula County, Montana, in 1964. A re-amortization agreement modifying the terms of payment was recorded in May, 1967. In September, 1974, Sharbonos sold their five acres, on which was located a modular home, to Orian and Ngoc Alexander on a contract for deed. Two years later Alexanders assigned their buyers' interest in the contract to Thomas F. and Norma Jean

Darden, husband and wife, defendants-respondents in this action.

Dardens assumed all of Alexanders' obligations under the contract. The monthly payments of $229.78 were made to First State Bank of Missoula, escrow agent, which was to forward $30.50 a month to Farmers State Bank in Victor, Montana, to be applied on the Ogilvie-Roach contract held in escrow there. An addendum to the contract provided that the escrow agent was to forward $144.41 per month to Western Montana National Bank of Missoula for payment on the modular home. The balance of the payment, $54.87, was forwarded to Sharbonos in Newton, Kansas.

The entire balance was due and payable on or before five years from the date of the contract. The contract provided the buyers were to "keep the improvements on the property insured for fire and extended coverage in at least the amount of the unpaid interest due . . . , payable as interests appear." Dardens purchased fire insurance naming themselves and Western Montana Bank as insureds, but did not name the Sharbonos.

Dardens did not make the tax payment for 1978 when the first half was due November 30, 1979. Nor did they make any thereafter. They did make timely monthly payments on the contract until the balloon payment was due. They did not tender the balance due September 23, 1979, under the balloon payment, and a notice of default was delivered October 8, 1979.

Meanwhile, Roach paid off the contract with Ogilvie in April, 1979, but a mortgage release from the Federal Land Bank was not recorded until February, 1980.

3

L. G. Sharbono died December 29, 1979. As a result, the balance due the Western Montana National Bank on the modular home was paid by a credit life insurance policy on his life. In March, 1980, the Dardens entered into a lease and option to purchase with David L. and Paulette M. Pittsley. The Pittsleys took actual possession of the property. In June, 1981, a fire totally destroyed the modular home. The Dardens received $33,500 proceeds from the insurance policy they carried on the property.

After the Dardens received this money, a second default notice was delivered in September, 1981. On October 1, 1982, Mrs. Sharbono filed suit alleging breach of contract for deed, demanding specific performance from defendant and a judgment for $36,253.02, or in the alternative, rescission of the contract for deed and ownership of the property plus judgment for $12,453.02.

There is an abundance of chaff in this case. Once it is removed, the only substantive issue is whether the judgment of the District Court is proper, or whether it results from an abuse of discretion.

Mrs. Sharbono argues six findings of fact omitted by the District Court resulted in erroneous conclusions of law detrimental to her. Specifically, she claims she is entitled to a larger judgment. She acknowledges any one of the abuses would not be sufficient to mandate a new trial or amended judgment, but together they constitute sufficient abuse to warrant action. This Court will not disturb findings of fact in a non-jury civil action unless they are clearly erroneous. Rule 52 M.R.Civ.P., Price Building Service, Inc. v. Christensen (Mont. 1985), 697 P.2d 1344, 1348, 42 St. Rep.

440, 444. The Court will not disturb the District Court's findings as being clearly erroneous in this case.

Dardens did not tender the balloon payment when due. The question is whether failure of Mrs. Sharbono to convey good title excuses Dardens' default, thereby entitling Dardens to keep the insurance money they received when the modular home burned. The District Court's findings did not include the fact that Dardens' failure to make the balloon payment constituted a default under the terms of the contract:

> DEFAULT:
>
> . . . if the Buyers fail to make the payments herein provided for or fail to perform any of the other covenants and agreements on their part to be kept and performed when the same are due or to be performed, or within thirty days after written notice is given to them by the Sellers, then and in that event the Sellers may, at their option, terminate this agreement and declare it to be null and void, in which event all of the buyer's rights hereunder shall be terminated, and all monies theretofore paid by the Buyers shall be retained by the Sellers as reasonable rent and as damages, and Sellers shall have the right to immediately reenter and recover full and exclusive possession of the premises.

Sharbono could not convey clear title to Dardens in September, 1979, because Roach had not conveyed clear title to her. When Roach paid off Ogilvie in April, 1979, he did not obtain a mortgage release on the land he had purchased from Ogilvie and sold to Sharbono. The inability to convey clear title puts Sharbono in breach of the terms of the contract:

> Seller Warrants [the existing mortgage] is current and agrees to continue paying and satisfy [the mortgage] prior to the buyers' completing this contract.

5

By the terms of the contract, satisfaction of the mortgage by Sharbono is a condition precedent to Dardens' completion of the contract. A condition precedent is ". . . one which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed." Section 28-1-403, MCA. The contract also is clear that Sharbono must be able to convey title concurrent with Dardens' payment of the balloon. "Conditions concurrent are those which are mutually dependent and are to be performed at the same time." Section 28-1-404, MCA. The court found "Dardens failure to pay the balloon payment when due or in response to the notice of default was excused by Sharbono's prior breach of contract." We agree.

The issue can be resolved by determining the legal and/or equitable interests of the parties as they relate to liability. When real estate is sold on a contract for deed, as it was in this case, the doctrine of equitable conversion traditionally has been applied by the courts when dealing with legal questions which may arise between the time the real estate contract is executed and the time it is performed.

> Under the doctrine of equitable conversion, a contract of purchase and sale of real estate vests the entire beneficial interest in the land in the vendee. During the life of the contract, the vendor retains legal title only as security for the purchase price. The vendee's interest is a real interest, whereas that of the vendor is held to be a personal property interest in the purchase price.

First State Bank v. United States (9th Cir. 1937), 92 F.2d 132, 134. (Applying Montana law.) See also Kern v. Robertson (1932), 92 Mont. 283, 288, 12 P.2d 565, 567.

Questions which arise under this doctrine can be divided into one of two categories: characterization issues, whether the property interest is real or personal, or risk/loss issues. It is risk/loss with which we are concerned here. In a risk/loss situation equitable conversion imposes the loss on the vendee. The majority of American courts either have adopted or recognize the doctrine of equitable conversion which places the risk/loss on the vendee from the moment of signing. See for example, Zitzelberger v. Salvatore (Pa. 1983), 458 A.2d 1021; Ridenour v. France (Ill. 1982), 442 N.E.2d 716; Utah State Med. Assoc. v. Utah St. Employee Credit Union (Utah 1982), 655 P.2d 643; Re Foreclosure of Deed of Trust Given by Taylor (N.C. 1982), 298 S.E.2d 163. Under the majority view, however, the risk of loss remains on the vendor until he can deliver clear title.

> [I]t is well settled that the doctrine of equitable conversion, which in the absence of a specific contract provision passes the risk of loss to the purchaser, only applies when the seller is able to convey title as required in the contract. "If the vendor is so situated that he cannot make title according to the contract, the purchaser will not be regarded as the owner; and if the property is damaged before the vendor is in condition to convey, the loss must fall on him, and not on the purchaser." [Citations omitted.]

Phillips v. Bacon (1980), 267 S.E.2d 249, 250. See also Parr-Richmond Industrial Corp. v. Boyd (1954), 272 P.2d 16; Amundsen v. Severson (1919), 170 N.W. 633; Pindar, American Real Estate Law, 701, §18-24 (1976). In the case at bar, the doctrine does not apply because Sharbono did not have clear title to convey to Dardens at the time the balloon payment was due.

We do not find the facts, conclusions and judgment of the District Court to be an abuse of discretion. The District Court's conclusion that Dardens had breached the contract by their failure to obtain fire insurance with the proper loss payable clause does not affect the judgment. We find Dardens failure to name Sharbono as an insured party did not put them in default. Their failure to make the balloon payment when due is excused by Sharbono's inability to convey title. No attorney fees are to be awarded either side. The judgment of the District Court is affirmed.

John Conway Harrison
Justice

We Concur:

Chief Justice

Justices

8