Jim C. SCHLOSSER and Katherine
M. Schlosser, Plaintiffs and
Appellants,

v.

NORWEST BANK SOUTH DAKOTA,
N.A., as Trustee of the Estate of
Otto Borchgrevink,

and

Valley National Bank, as Executor of the
Estate of Phyllis Borchgrevink,
Defendants and Appellees.

No. 18081.

Supreme Court of South Dakota.

Sept. 8, 1993.

Rehearing Denied Oct. 15, 1993.

Harlan A. Schmidt, Spearfish, for plaintiffs and appellants.

Ronald E. Clabaugh of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee Norwest Bank South Dakota, N.A.

Kenneth L. Heisterkamp and William A. May of Costello, Porter, Hill Heisterkamp & Bushnell, Rapid City, for defendant and appellee Valley Nat. Bank.

KEAN, Circuit Judge.

Otto and Phyllis Borchgrevink (Borchgrevinks) were owners of a large ranch which straddled the Wyoming and Montana state line. Three thousand one hundred fifty-five acres were in Crook County, Wyoming, and 4002 acres were in Carter County, Montana. The ranch was sold in 1979 on a contract for deed to Jim C. and Katherine M. Schlosser (Schlossers). Annual installments were payable through 1994. A clause in the contract allowed the Borchgrevinks to reserve a joint life interest in the brick dwelling house (and other surrounding area) which house was located on the Montana property.

Otto Borchgrevink died in 1982. Phyllis Borchgrevink remained in possession of the brick dwelling until December 16, 1988, when the dwelling was destroyed by a fire. Neither the Borchgrevinks nor the Schlossers had purchased insurance to cover the fire loss. Prior to Phyllis Borchgrevink's death in 1992, the Schlossers made demand upon her and Norwest Bank of South Dakota, which had succeeded to Otto Borchgrevink's interest in the contract as trustee under his will, for a reduction in the balance due on the contract commensurate with the value of the brick dwelling. That request was refused. After Phyllis Borchgrevink's death, Valley National Bank became her executor.

The refusal to adjust the contract brought on this legal proceeding. The Schlossers allege two grounds for relief. First, the Borchgrevinks had the obligation under the contract to maintain insurance upon the now destroyed dwelling. Second, regardless of the contract, common and statutory law placed the risk of loss with the Borchgrevinks (now their legal successors). The Schlossers seek as relief a reduction in the contract amount corresponding to the value of the structure or its replacement upon the Montana land.

After service of the summons and complaint and before an answer was filed, the defendants (Norwest Bank and Valley National Bank as trustee of Otto's estate and executor of Phyllis' estate respectively) separately moved for judgment of dismissal under SDCL 15–6–12(b) asserting that the complaint failed to state a claim upon which relief can be granted. A separate hearing upon the motion was held on each motion, but there was no record of those hearings. In separate opinions the trial court concluded that each motion should be granted. In so ruling the court concluded: (1) the Borchgrevinks had only a life estate in the dwelling; (2) the contract did not require the Borchgrevinks to maintain insurance on the dwelling; and, (3) under Montana case law the risk of loss is with the buyer once the contract is signed citing the decision of *Sharbono v. Darden,* 220 Mont. 320, 715 P.2d 433, 435 (1986). The trial count also made a separate ruling as to Norwest Bank, Otto Borchgrevink's trustee, holding that upon his death any obligation he might have had terminated any obligation of the trustee.

In the case of *Janklow v. Viking Press,* 378 N.W.2d 875, 877 (S.D.1985), this Court in ruling upon a dismissal under a Rule 12(b)(5) motion held:

> We first examine the issue on granting the SDCL 15–6–12(b)(5) motion. A motion under SDCL 15–6–12(b)(5) is identical to a motion under FRPC 12(b)(6). For convenience hereafter, defendants' motions will be referred to as Rule 12(b)(5) motions. We hold that the trial judge did err in granting it.

In its decision, the trial court correctly noted that, for the purposes of the motion,

the complaint is construed in the light most favorable to the pleading party, facts "well pled" and not mere conclusions may be accepted as true and doubts are resolved in favor of the pleader. It is also noted, "pleadings should not be dismissed merely because the court entertains doubts as to whether the pleader will prevail in the action as this is a matter of proof, not pleadings. The rules of procedure favor the resolution of cases upon the merits by trial or summary judgment rather than on failed or inartful accusations." *Citing* 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1357 (1971). The trial court then points out the exception noted in Wright & Miller for traditionally disfavored causes of action such as libel.

In a concurring opinion Justice Henderson opined:

> This appeal is not a case deciding whether Janklow is right or wrong or the publisher, author, or book sellers are right or wrong; or whether Janklow was or was not libeled; it is only to decide, *in law*, if his complaint states a cause of action for libel.
>
>    *     *     *     *     *     *
>
> "A motion to dismiss ... tests the law of a plaintiff's claim and not the facts which support it." *Hunt v. Hunt*, 309 N.W.2d 818, 820 (S.D.1981).

*Id.* at 882. In accord, *Johnson v. Kreiser's, Inc.* 433 N.W.2d 225, 226 (S.D.1988) (a case involving wrongful termination under the public policy exception to the at-will employment doctrine under SDCL 60–4–4) and *Akron Savings Bank v. Charlson*, 83 S.D. 251, 158 N.W.2d 523 (1968).

■ In determining whether to grant the Rule 12(b)(5) motion, the court considers the complaint's allegations and any exhibits which are attached. The court accepts the pleader's description of what happened along with any conclusions reasonably drawn therefrom. The motion may be directed to the whole complaint or only specified counts contained in it. The motion "is viewed with disfavor and is rarely granted." The test most often applied is found in the leading case of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957):

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

The question is whether in the light most favorable to the plaintiff, and with doubt resolved in his or her behalf, the complaint states any valid claim of relief. The court must go beyond the allegations for relief and "examine the complaint to determine if the allegations provide for relief on any possible theory." 5 C. Wright and A. Miller, *supra.*

■ The dispute in this case as found in the contract, which is an exhibit to the complaint, centers upon two clauses which appear therein. In Clause 4 the parties agree that the Borchgrevinks have a right to use the dwelling during each of their respective lives. This clause also states:

> Sellers to sustain and pay all property taxes on said dwelling and all utilities, *insurance,* maintenance and repairs relative to said dwelling and access thereto.

In Clause 6 this document reflects:

> *Property insurance on the dwelling occupied by* SELLERS during their lives, as heretofore state, *shall be the responsibility of SELLERS and SELLERS shall sustain expense thereof;* SELLERS, during their lifetimes or during their continued residential use of said dwelling, shall be entitled to receive insurance benefits arising from insured loss or destruction payable under SELLERS' property insurance policy. Nothing herein shall preclude nor prevent BUYERS from obtaining and maintaining such property insurance on said dwelling as BUYERS *may elect to obtain.* BUYERS may obtain and maintain property insurance on other improvements located on the premises for such amounts and for such coverages as BUYERS may elect. *All property policies shall contain appropriate contract for deed endorsements reflecting interests of the parties.* (emphasis added by the court).

The question then to be resolved is whether these facts, all of which have been gleaned

from the complaint and the accompanying contract, set forth a well pled cause of action or are so deficient as a matter of law that the complaint must fail. To answer this question the court must turn to the body of law governing the topic.

In the annotation, "Risk of Loss by Casualty Pending Contract For Conveyance of Real Property—Modern Cases," 85 A.L.R.4th 233 (1991), the general rule of law from the cases reported indicates that the purchaser under an executory contract usually bears the risk of loss to the property caused by a casualty after execution of the contract, but prior to the transfer of title. The annotation then continues by describing various exceptions to the general rule:

a. The risk of loss does not transfer if there is an agreement between the parties which allocates the risk to one or the other party or the agreement prescribes a shared loss on some prearranged formula. *Id.* § 3 at p. 242. Typical cases reciting this rule are *First State Bank v. United States,* 92 F.2d 132, 134 (9th Cir.1937) (applying Montana law) and *Fellmer v. Gruber,* 261 N.W.2d 173 (Iowa, 1978) (a case where the general rule did not apply because seller agreed to carry insurance on property until an exchange took place).

b. When the seller cannot pass good title, the doctrine of passing the risk of loss to the buyer does not apply unless there is an agreement to the contrary. Typical of this line of cases is *Sharbono v. Darden, supra* at 435–436, the case heavily relied upon by the trial court in this case. The language of the case leaves no doubt about the status of Montana law on this point:

Under the majority view, however, the risk of loss remains on the vendor until he can deliver clear title.

[I]t is well settled that the doctrine of equitable conversion, which in the absence of a specific contract provision passes the risk of loss to the purchaser, only applies when the seller is able to convey title as required in the contract. If the vendor is so situated that he cannot make title according to the contract, the purchaser will not be regarded as the owner; and, if the property is damaged before the vendor is in condition to convey, the loss must fall on him, and not on the purchaser.

In accord with this Montana case is *Bechtel v. Dakota Nat. Bank,* 35 S.D. 191, 151 N.W. 887, 888 (1915). South Dakota has since adopted the Uniform Vendor and Purchaser Risk Act, SDCL 43–26–5 to 43–26–8.

c. Another exception exists where, after the signing of the executory contract and without an agreement to the contrary, if the seller retains possession of the premises, he has oftentimes been allocated with the risk of loss due to casualty which occurs prior to the transfer of title. 85 A.L.R.4th 233, § 7(a). There is a contrary view which holds that the possession by the seller is immaterial. *Id.* § 7(b).

■ The point to be taken from this discussion is that, when the allegations of the complaint are compared to the existing law, the complaint states a good cause of action as to Valley National Bank as Phyllis Borchgrevink's executor in these particulars: (1) there is a claim that the contract allocates risk of loss to Phyllis Borchgrevink because she had the obligation to purchase insurance on the dwelling; (2) the failure of the Phyllis Borchgrevink to maintain insurance was a breach of the contract; and, (3) Phyllis Borchgrevink's possession of the premises and the duty to keep the premises in repair under the contract allocated the risk of loss to her. Moreover, the question of good title has never been analyzed. This theory has never been raised, but it is one the court can raise and has an obligation to do so because good title is the essence of this real estate contract. 5 C. Wright and A. Miller, *supra.* In testing the law of the Schlossers' claim against the recitations in the complaint, the complaint is adequate to defeat the Rule 12(b)(5) motion as to Valley National Bank but not as to Norwest Bank.

■ As noted above, a Rule 12(b) motion can be directed only to a specified count in a complaint. And, if a complaint or that part thereof clearly demonstrates that no claim

exists, then the motion to that should be granted. 5 C. Wright and A. Miller, *supra.* *Case v. State Farm Mutual Automobile Ins. Co.*, 294 F.2d 676 (5th Cir.1961). In reviewing the Schlossers' complaint, it is not disputed that Otto Borchgrevink had a life estate in the dwelling. He died in 1982. When he died, his life estate terminated. There was no interest which could pass on to his trustee. It was not an estate in real property which could be devised by will or devised in any fashion. *In re Estate of Glaser*, 217 Neb. 104, 348 N.W.2d 127, 129 (1984); Restatement, *Property*, § 152. Thus, assuming that Otto Borchgrevink had an obligation to maintain insurance on whatever legal theory might apply, this obligation to maintain property insurance was limited to a period of time "during their lives." When Otto died, his obligation ceased to exist. The purchasing of insurance is usually an annual event. Otto was not obligated to buy insurance during the term of the contract, only "during their lives." The trustee, Norwest Bank, had no interest in the real estate except to convey any real estate which Otto may have been bound to convey prior to his death. SDCL 30–19–1. If a breach of contract did occur, it could really not have occurred until 1988 when there was no insurance and when the fire destroyed the dwelling. This possible breach, however, went only as to Phyllis Borchgrevink, and her present executor, not against Otto Borchgrevink's trustee as his obligation to buy insurance was extinguished six years before the fire destroyed the dwelling. Norwest's sole obligation is to deed whatever interest it has in the contract as Otto Borchgrevink's successor by law to the Schlossers once the contract is paid in full.

The case is affirmed in part, reversed in part and remanded in part back to the trial court for further proceedings after the order for dismissal is vacated. The court should require an answer to be filed within a reasonable time after the remittitur is made to the circuit clerk of courts.

HENDERSON, J., concurs.

SABERS, J., concurs in result.

MILLER, C.J., and WUEST, J., concur in part and dissent in part.

KEAN, Circuit Judge, for AMUNDSON, J., disqualified.

SABERS, Justice (concurring in result).

I concur in result on the basis of South Dakota law in view of the fact that the parties have not briefed the issues under Montana law.

WUEST, Justice (concurring in part and dissenting in part).

In my opinion, the trial court was correct in granting Valley National Bank's motion to dismiss; therefore, I dissent to that portion of the opinion that holds otherwise.

Whether the language of a contract is ambiguous is a question of law. *American State Bank v. Adkins*, 458 N.W.2d 807, 809 (S.D.1990) (citing *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D. 1986)). Questions of law are fully reviewable de novo by this court. *Permann v. Department of Labor*, 411 N.W.2d 113, 116 (S.D. 1987). "Unless the language is ambiguous or a different intent is manifested, the language in a contract is to be given its plain and ordinary meaning." *American State Bank*, 458 N.W.2d at 809 (citing Restatement (Second) of Contracts § 202(3) (1981)). There is a presumption that the writing accurately reflects the intent of the parties. *Enchanted Museum*, 398 N.W.2d at 152.

The Borchgrevinks and Schlossers provided for insurance of their respective interests in paragraph six of the contract for deed. Although the Borchgrevinks were responsible for maintaining insurance on the dwelling during their life tenancy, the contract specifically provided they were to receive any proceeds.

> Sellers, during their lifetimes or during their continued residential use of said dwelling, shall be entitled to receive insurance benefits arising from insured loss or destruction payable under Sellers' property insurance policy[.]

Therefore, even if the Borchgrevinks had purchased insurance, by the clear terms of

the contract they, not the Schlossers, would have received the policy benefits.

There was no contractual duty for the Borchgrevinks to replace the destroyed dwelling with any insurance proceeds. Had they done so, they would have had no right to live in the replacement house. Under paragraph four of the contract, their right live in the house:

> [I]s restricted to the present dwelling any improvements or additions thereto made by Sellers' or either of them, and does not extend to any replacement dwelling or structures (in the event of the destruction of the present dwelling)[.]

Additionally, paragraph six of the contract provided that the Schlossers could insure their own interest in the dwelling:

> Nothing herein shall preclude nor prevent Buyers from obtaining and maintaining such property insurance on the dwelling as Buyers may elect to obtain.

The Schlossers did not obtain insurance on their interest in the dwelling.

The contract is clear and unambiguous. Where the contract is clear, it should be enforced as written.

> The rights of the parties may not be resolved by what they might have included in a contract nor by what the court may have regarded as abstract fairness; in other words, a court cannot make a contract for the parties that they did not make for themselves nor impose upon a party an obligation not assumed.

*Raben v. Schlottman,* 77 S.D. 184, 190–91, 88 N.W.2d 205, 208 (1958). Where the parties had the freedom to contract and they contracted to allocate the risk of loss, they must abide by their contract. *Accord, Azcon Const. Co. v. Golden Hills Resort,* 498 N.W.2d 630, 634 (S.D.1993); *L.R. Foy Constr. Co. v. Spearfish Sch. Dist.,* 341 N.W.2d 383, 388 (S.D.1983) (Henderson, J. specially concurring). Each party contracted to insure its own interest, neither party obtained insurance and now each party must bear the consequences.

MILLER, C.J., joins this special writing.