#27662-a-LSW
**2016 S.D. 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DR. SONIA HERNANDEZ, D.O.,                    Plaintiff and Appellant,

v.

AVERA QUEEN OF PEACE
HOSPITAL (AQOP) and DR. JOE
KRALL, Optometrist, in his official
capacity and personally,                      Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TIMOTHY W. BJORKMAN
Judge

\* \* \* \*

DR. SONIA HERNANDEZ, D.O.
Grand Prairie, Texas                          Pro se plaintiff and appellant.


LISA HANSEN MARSO
MATTHEW D. MURPHY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                     Attorneys for defendants and
                                              appellees AQOP, Chris Lippert,
                                              R.N., Dr. Ray Birkenkamp and
                                              Dr. Jennifer Tegethoff.


WILLIAM C. GARRY of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota                     Attorneys for defendant
                                              and appellee Dr. Joe Krall.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 29, 2016
OPINION FILED **09/28/16**

#27662

WILBUR, Justice

[¶1.]       After a hospital terminated its employee doctor, the doctor brought suit against the hospital and against multiple persons associated with the hospital. The circuit court dismissed a number of the doctor's causes of action, leaving for a jury to determine whether the hospital breached the employment contract and whether one party defamed the doctor.  During the jury trial, the court entered a judgment as a matter of law dismissing the defamation action.  The jury returned a verdict in favor of the hospital on the breach of contract claim.  The doctor appeals, asserting the circuit court erred when it dismissed many of her claims against the hospital and the additional parties and when it dismissed her defamation claim during trial.  We affirm.

**Background**

[¶2.]       Avera Queen of Peace Hospital (Avera) of Mitchell, South Dakota began employment negotiations with Dr. Sonia Hernandez in 2011 while Dr. Hernandez finished her ophthalmology residency in New York.  According to Dr. Hernandez, Avera wanted her to replace the practice of a retiring local ophthalmologist with a hospital-owned ophthalmology practice.  She claimed that Avera offered incentives to entice her to move to South Dakota, such as providing her an office, support staff, and loan forgiveness.  On February 11, 2011, the parties finalized the terms of their agreement, and Avera and Dr. Hernandez executed an employment contract.

[¶3.]       In August 2011, Dr. Hernandez arrived in Mitchell, South Dakota and commenced her employment.  She also purchased a home.  Avera had leased space

-1-

from the Krall Eye Clinic in Mitchell for Dr. Hernandez to use as an office. According to Dr. Hernandez, when she arrived in August, the office was unprepared and Avera failed to provide sufficient staff or equipment. She alleged that Avera's failure to honor its contractual agreement delayed her ability to see patients until October 2011.

[¶4.] Between October and November 2011, Dr. Hernandez performed six surgeries. Dr. Hernandez experienced complications during her first three surgeries. According to Dr. Hernandez, the complications occurred because the staff was not properly trained and the equipment was not in working order. After these first three surgeries, Avera assigned a proctor to work with Dr. Hernandez. Avera did so due to its concerns about Dr. Hernandez's complication rate and other issues. Dr. Jeffery Stevens proctored the next three surgeries performed by Dr. Hernandez. Afterwards, Dr. Stevens met with Avera's operating room director, Chris Lippert. Dr. Stevens informed Lippert that he had concerns about the way Dr. Hernandez operated because of her surgical techniques and the way she used the equipment. Dr. Stevens also issued a report. In the report, he recommended that Dr. Hernandez be monitored closely for at least three months if she were to continue to perform surgical procedures at Avera.

[¶5.] On November 22, 2011, Dr. Hernandez became, as she described, "gravely ill." Dr. Hernandez was hospitalized and informed Avera that she could not return to work until December 7, 2011. She took a leave of absence, which was indicated on Avera's "Personnel Action Form" as a "Medical Leave of Absence." While Dr. Hernandez was on medical leave, Avera orally informed her that it would

be terminating her immediately based on Section 8a of the employment contract. On January 18, 2012, Avera issued a letter giving Dr. Hernandez official notice that "Avera Queen of Peace is immediately terminating your employment." Avera informed Dr. Hernandez that "three (3) of your six (6) surgical cases resulted in patient complications and two (2) of those were considered significant. Avera Queen of Peace considers that patient health or safety is in imminent and serious danger from your actions." On the same day, Avera issued Dr. Hernandez a second letter informing her that it would be "summarily suspending [her] surgical privileges at Avera" due to her inability to "perform surgical procedures without such supervision and monitoring" and that "there is substantial likelihood of injury or damage to patients at Avera[.]"

[¶6.] After terminating Dr. Hernandez, Avera continued its peer review investigation of her cases and of its decision to suspend her privileges. Avera ceased its peer review because, according to Avera, Dr. Hernandez let her South Dakota medical license lapse. Under Avera's bylaws and its fair hearing plan, a physician must be licensed in South Dakota to have privileges at Avera. In Avera's view, because Dr. Hernandez let her medical license lapse, Avera did not need to review its decision to suspend Dr. Hernandez's privileges. Also, according to Avera, under the Health Care Quality Improvement Act (HCQIA) 42 U.S.C. § 11101 *et seq.*, Avera was required to report Dr. Hernandez's licensure forfeiture and privileges suspension to the National Practitioners Data Bank (NPDB). Therefore, Avera filed a report with the NPDB indicating that Dr. Hernandez let her medical license lapse and no longer had privileges at Avera.

[¶7.] In May 2012, Dr. Hernandez brought suit against Avera for (1) negligent misrepresentation, (2) fraud, constructive fraud, and fraud in the inducement, (3) breach of contract, (4) declaratory action, and (5) punitive damages. She asserted that she relied upon Avera's representations to her detriment. She claimed that Avera induced her to accept long-term employment when it was aware that such position was experimental in nature and that Avera suppressed facts about the true nature of the commitment. She alleged that as a result of Avera's breach of the implied covenant of good faith and fair dealing, she suffered damage. Dr. Hernandez asked the circuit court to declare that Avera be barred from seeking repayment of its loans to Dr. Hernandez.

[¶8.] Dr. Hernandez amended her complaint, adding Tom Clark, Chris Lippert, Dr. Ray Birkenkamp, Dr. Joe Krall, Dr. Jennifer Tegethoff, and Katena Products as parties. Dr. Hernandez added claims for discrimination, slander/libel, retaliation, gross negligence, and negligence per se. She alleged that Avera and Clark (the CEO of Avera) discriminated against her when they terminated her while she was on medical leave, when they violated the Americans with Disabilities Act (ADA), and when they terminated her based on her age, race, and sex in violation of Title VII of the Civil Rights Act of 1964. Dr. Hernandez asserted that Lippert and Dr. Krall "committed Slander or Libel" against her while she was employed at Avera, and Drs. Birkenkamp and Krall committed slander/libel after she returned from medical leave, and Lippert and Drs. Tegethoff and Birkenkamp committed slander/libel against her after Avera terminated her employment. Dr. Hernandez further claimed that because she refused to sign a severance agreement,

Avera and Clark retaliated against her, wrongfully terminated her, suspended her hospital privileges, and reported "a bias report" to the NPDB. According to Dr. Hernandez, Avera engaged in gross negligence or negligence per se because it breached "its duty to perform the necessary inspections on surgical instruments acquired from Katena Products," because it did not have sufficient back up surgical instruments, and because its surgical instruments fell below the Joint Commission on Accreditation of Healthcare Organizations and Quality Care standards.

[¶9.] Each defendant filed an answer, and Avera asserted a counterclaim for payment due on its loan to Dr. Hernandez. The defendants also moved to dismiss Dr. Hernandez's amended complaint for failure to state a claim upon which relief could be granted. The circuit court held a hearing on August 27, 2013. Dr. Hernandez appeared pro se. On September 13, 2013, the court issued an order granting Katena Products' motion to dismiss with prejudice. The court granted Avera's motion to dismiss with prejudice on the claims of gross negligence/negligence per se, slander/libel, and retaliation. The court granted Clark's motion to dismiss with prejudice. The court granted Dr. Krall's, Lippert's, Dr. Birkenkamp's, and Dr. Tegethoff's motions to dismiss with prejudice. However, the court granted Dr. Hernandez "leave to file a second amended complaint as to her slander/libel allegations against these Defendants[.]"

[¶10.] Dr. Hernandez filed a second amended complaint in October 2013. She amended her defamation claims against Lippert and Drs. Birkenkamp and Tegethoff. She also restated her defamation claim against Avera. Avera moved to strike the second amended complaint and the other defendants moved to dismiss

the second amended complaint. The court held a hearing. It issued an order on November 12, 2013, dismissing the defamation claims against Lippert and Drs. Birkenkamp and Tegethoff and struck/dismissed the defamation claim against Avera.[1] After this order, the remaining causes of actions and parties included: slander/libel against Dr. Krall and negligent misrepresentation, fraud, breach of contract, and discrimination against Avera.

[¶11.] In April 2015, Avera and Dr. Krall moved for summary judgment on all of Dr. Hernandez's remaining claims. The circuit court held a hearing on June 5, 2015, and issued an order dismissing all claims except for the "Breach of Employment Contract claim relating to [Dr. Hernandez's] termination only." The court's written order indicated that the court dismissed "Plaintiff's pending Misrepresentation claim, Fraud claim, Discriminatory Discharge claim, Discriminatory National Practitioner Databank (NPDB) reporting or any other claim based upon [Avera's] NPDB report about the Plaintiff, Breach of Contract claims relating to equipment, facilities, staff, supplies, and/or length of employment term, and her request for Punitive Damages." The court denied Dr. Krall's motion for summary judgment.

[¶12.] Dr. Hernandez's case against Avera and Dr. Krall came before a jury on October 13, 2015. At the close of the case, Dr. Krall moved for a judgment as a

---

1. Dr. Hernandez appealed the court's dismissal order to this Court. We dismissed the appeal on December 19, 2013, informing Dr. Hernandez that "the above-entitled matter is not an order appealable of right pursuant to SDCL 15-26A-3[.]" We issued a subsequent order on January 23, 2014, denying Dr. Hernandez's motion to reinstate her appeal and stay proceedings.

matter of law. The court granted Dr. Krall's motion. On October 16, 2015, the jury returned a verdict in favor of Avera on Dr. Hernandez's claim that Avera breached the parties' employment contract.

[¶13.]     Dr. Hernandez, pro se, appeals and asserts the following issues for our review:

1.     Did the circuit court err in dismissing the defamation claim against Lippert, Drs. Birkenkamp and Tegethoff, and Avera on the basis of immunity since those parties failed to meet the standards set forth in 42 U.S.C. § 11112(a), (b), and (c).

2.     Did the circuit court err in dismissing the defamation claim against Lippert, Drs. Birkenkamp and Tegethoff, and Avera since those parties knowingly reported false and misleading information to the NPDB.

3.     Did the circuit court err in dismissing the defamation claim against Avera and Dr. Tegethoff since those parties knowingly reported false and misleading information to the Texas Medical Board on Form L.

4.     Did the circuit court err in dismissing the discrimination action against Avera for terminating Dr. Hernandez in violation of the Family Medical Leave Act.

5.     Did the circuit court err in dismissing the discrimination action against Avera for terminating Dr. Hernandez in violation of the Americans with Disabilities Act.

6.     Did the circuit court err in dismissing the discrimination claim under Title VII because Avera knowingly reported false and misleading information to the NPDB.

7.     Did the circuit court err in dismissing the wrongful termination and suspension of privileges claims before engaging in the peer review process of Dr. Hernandez under Avera's bylaws and under 42 U.S.C. § 11112(a), (b), and (c).

8.     Did the circuit court err in dismissing the discrimination claim under Title VII against Avera.

9.     Did the circuit court err in dismissing the defamation claim against Dr. Krall in the middle of the trial due to Dr. Hernandez's crying on the witness stand while testifying, and not as a matter of law.

## Analysis

[¶14.] Dr. Hernandez's first three issues concern her defamation causes of action.[2] In September and October 2013, the circuit court dismissed Dr. Hernandez's defamation claims against Lippert, Drs. Birkenkamp and Tegethoff, and Avera with prejudice because Dr. Hernandez's amended complaint failed to state a claim upon which relief could be granted under SDCL 15-6-12(b)(5).

[¶15.] We review the circuit court's decision to grant a motion to dismiss under SDCL 15-6-12(b)(5) de novo. We no longer apply the rule that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Sisney v. Best Inc.*, 2008 S.D. 70, ¶ 7, 754 N.W.2d 804, 808, *abrogating Schlosser v. Norwest Bank S.D.*, 506 N.W.2d 416, 418 (S.D.1993). Instead, to survive a motion to dismiss under SDCL 15-6-12(b)(5), "[f]actual allegations must be enough to raise a right to relief above the speculative level. The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Best*, 2008 S.D. 70, ¶ 7, 754 N.W.2d at 808 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

---

2. Avera argues that Dr. Hernandez's issues are not properly before this Court because Dr. Hernandez failed to identify the circuit court's September 2013 or November 2013 orders in her notice of appeal and failed to include the orders in the appendix of her brief to this Court. Dr. Hernandez is not represented by counsel on appeal. In her docketing statement filed with her notice of appeal, she indicated that the circuit court dismissed her claims for defamation against these parties. We consider her claims.

553, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007); *Sisney v. State*, 2008 S.D. 71, ¶ 8, 754 N.W.2d 639, 643. As we stated in *Sisney*:

> "While a complaint attacked by a Rule 12(b)(5) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause action will not do." The rules "contemplate a statement of circumstances, occurrences, and events in support of the claim presented." Ultimately, the claim must allege facts, which, when taken as true, raise more than a speculative right to relief. Furthermore, "where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)([5]) is appropriate."

2008 S.D. 71, ¶ 8, 754 N.W.2d at 643 (internal citations omitted).

[¶16.]      In her argument to this Court, Dr. Hernandez does not cite or refer to the allegations specifically contained in her amended complaint or second amended complaint, which are the two documents this Court is confined to reviewing because Dr. Hernandez's claims were dismissed under SDCL 15-6-12(b)(5). Instead, Dr. Hernandez refers us to testimony offered at trial on her breach of contract claim against Avera and defamation claim against Krall. She also refers this Court to evidence that is not part of the record. Because, on this issue, we cannot review the record in its entirety or the testimony offered at trial, we analyze Dr. Hernandez's argument by reviewing her amended complaint and second amended complaint.

[¶17.]      In regard to her claim against Avera, Dr. Hernandez's amended complaint alleges "[t]hat Defendant Avera Queen of Peace committed Libel against Plaintiff by providing information that was bias, to the National Practitioners Data Bank." An action for libel under SDCL 20-11-3 requires an unprivileged, false publication. The court dismissed the claim against Avera relying on *Wojewski v.*

*Rapid City Reg. Hosp., Inc.*, 2007 S.D. 33, 730 N.W.2d 626. It found that, under *Wojewski*, Dr. Hernandez's cause of action, "could not under any set of circumstances result in a favorable outcome for the plaintiff because of the immunity" under HCQIA.

[¶18.] Avera argues that the circuit court relied on the wrong immunity provision, but was correct to rule that Dr. Hernandez would not be entitled to relief because Avera had immunity in making its report to the NPDB. Avera contends that immunity exists under 42 U.S.C. § 11137(c) rather than 42 U.S.C. § 11112 relied upon by the circuit court. We agree. Under 42 U.S.C. § 11133, Avera is required to report adverse action taken with respect to the clinical privileges of its physicians. *See Hooda v. W.C.A. Serv. Corp.*, No. 11-CV-504-A, 2013 WL 2161821 (W.D.N.Y. May 17, 2013). Then, under 42 U.S.C. § 11137(c), Avera would have immunity from civil liability for making the report unless Dr. Hernandez could establish that the report was made with knowledge of the falsity of the information contained in the report. *See Lee v. Hosp. Auth.*, 353 F. Supp. 2d 1255, 1265 (M.D. Ga. 2004) (immunity under this section arises when the claim is based on damages due to the report to the NPDB).

[¶19.] Here, Avera suspended Dr. Hernandez's privileges and began an investigation. While the investigation was pending, Dr. Hernandez let her medical license lapse. Nowhere in her amended complaint does Dr. Hernandez claim that Avera's report is false. She claims the report was "bias." Because "the allegations show on the face of the complaint there is some insuperable bar to relief," the circuit

court did not err when it dismissed Dr. Hernandez's defamation claim against Avera. *See Sinsey*, 2008 S.D. 71, ¶ 8, 754 N.W.2d at 643.

[¶20.] In regard to her defamation claims against Lippert and Drs. Birkenkamp and Tegethoff, the circuit court allowed Dr. Hernandez to amend her amended complaint. In her second amended complaint, Dr. Hernandez alleged that Dr. Birkenkamp "intentionally and knowingly reported false and misleading information to the NPDB" when he gave her a poor rating after reviewing her work. She asserted that Dr. Birkenkamp committed libel by giving the poor report, contributing to her termination and suspension of privileges, his "involvement in a bias . . . report to the NPDB, loss of job opportunities, and inability to obtain a Texas Medical License to practice medicine in Texas." In regard to Lippert, Dr. Hernandez alleged that he committed libel/slander when he discussed preoperative labs at a staff meeting in Dr. Hernandez's presence and when he wrote inaccurate, false, and malicious statements to others associated with Avera related to Dr. Hernandez's care of her patients. In Dr. Hernandez's view, Lippert's information was used in the report to the NPDB. Finally, in regard to Dr. Tegethoff, Dr. Hernandez alleged that she "intentionally libeled Plaintiff and committed defamation of Plaintiff by libeling Plaintiff on the Texas Medical Board, (TMB), Form L," by referring to the NPDB report.

[¶21.] The circuit court dismissed Dr. Hernandez's defamation claims against these parties because Dr. Hernandez failed to support her claim that these parties published objectively false statements defaming Dr. Hernandez, not because these parties had immunity under 42 U.S.C. § 11112. Our review of the record supports

the court's conclusion. The second amended complaint does not include "a statement of circumstances, occurrences, and events in support of the claim presented" or "allege facts, which, when taken as true, raise more than a speculative right to relief." *See Sinsey*, 2008 S.D. 71, ¶ 8, 754 N.W.2d at 643 (quoting *Best*, 2008 S.D. 70, ¶ 7, 754 N.W.2d at 808). In her second amended complaint, Dr. Hernandez does not claim that the report to the NPDB was itself false. Nor does she identify an objectively false fact published by Lippert or Drs. Birkenkamp and Tegethoff. The form completed by Dr. Tegethoff for the Texas Licensure Board merely refers the reader to the NPDB report. And Dr. Birkenkamp's notes, even if they contained false statements, were never published. Lastly, Dr. Hernandez attributes no falsity to Lippert's statements or notes. Because the court dismissed Dr. Hernandez's claims against Lippert and Drs. Birkenkamp and Tegethoff for Dr. Hernandez's failure to show she is entitled to relief, we need not examine the court's decision to dismiss the claims based on immunity under 42 U.S.C. § 11112.

[¶22.] Dr. Hernandez's next three issues and the eighth issue concern the court's dismissal of her discrimination claim against Avera on summary judgment. She asserts that Avera discriminated against her in violation of the Family Medical Leave Act (FMLA) and the ADA. She also claims that Avera discriminated against her in violation of Title VII based on the NPDB report and based on her sex, age, race, and religion.

[¶23.] Dr. Hernandez's claim that Avera discriminated against her in violation of the FMLA cannot survive because Dr. Hernandez never asserted a

-12-

cause of action against Avera for a violation of the FMLA. In fact, Dr. Hernandez indicated in her second amended complaint that she was on "medical leave that had been approved by Defendants," not FMLA leave. A review of the record confirms that Dr. Hernandez was not on FMLA leave. On Avera's personnel action report, the box indicating leave under the FMLA was unchecked. The reason listed for leave on that report was "Medical Leave of Absence" and the box indicating the type of leave was "Leave of Absence."

[¶24.] Similarly, the court properly granted summary judgment against Dr. Hernandez's claim that Avera discriminated against her in violation of the ADA. Dr. Hernandez offered no evidence that she has a qualifying disability or evidence that Avera perceived her as disabled. We further decline to review Dr. Hernandez's claim that Avera discriminated against her under Title VII in violation of her civil rights in general or when it filed its report with the NPDB. Dr. Hernandez informed the circuit court at the summary judgment hearing that she was not moving forward on her discrimination claim based upon the NPDB report.

[¶25.] Dr. Hernandez's seventh issue asserts the circuit court erred when it dismissed "the wrongful termination and suspension of privileges claims before engaging in the peer review process of Dr. Hernandez under Avera's bylaws and under 42 U.S.C. § 11112(a), (b), and (c)." In her brief on the issue, Dr. Hernandez claims that she was "wrongfully fired" because Avera failed to follow the provisions of 42 U.S.C. § 11112, and that Avera "violated her rights by suspending her privileges and then reporting that suspension to the NPDB without giving her notice or an opportunity to be heard." A review of the record reveals no cause of

action against Avera by Dr. Hernandez for wrongful termination or suspension of privileges based on Avera's bylaws or 42 U.S.C. § 11112(a), (b), and (c). Dr. Hernandez claims the issue was resolved at a motions hearing, but a review of the transcripts from the various motion hearings reveals no argument related to these causes of action. In her reply brief, Dr. Hernandez does not identify how this claim is before this Court. Because Dr. Hernandez never asserted this claim below, we decline to consider it on appeal.

[¶26.]        Dr. Hernandez's last issue concerns her cause of action against Dr. Krall. She contends that the circuit court erred when it granted a judgment as a matter of law and dismissed her claim in the middle of trial. According to Dr. Hernandez, "Dr. Krall admitted to not being a medical doctor, never observing Hernandez perform surgeries, never seeing his patients after surgery to compare before and after surgery." She avers Dr. Krall knew Avera had malfunctioning equipment and defective instruments, supplies, and staff. Based on this information, she argues that the jury should have had the opportunity to consider whether Dr. Krall knowingly gave false statements amounting to malice sufficient to overcome his common interest privilege.

[¶27.]        Dr. Krall responds that the circuit court correctly ruled that the statements he made fell within the common interest privilege as a matter of law because the comments were made between interested individuals. Dr. Krall also asserts that Dr. Hernandez presented no evidence that he made the statements with malice or in reckless disregard of the truth. Dr. Krall shared an office space with Dr. Hernandez. She operated on at least two of Dr. Krall's patients. Thus, in

-14-

his view, the concerns he shared were based on his experiences and were not with malice.

[¶28.] "If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." SDCL 15-6-50(a)(1). We recently explained that the appropriate standard of review on a court's decision to grant or deny a motion for a judgment as a matter of law is de novo. *Magner v. Brinkman*, 2016 S.D. 50, ¶ 13, 883 N.W.2d 74, 80-81.

[¶29.] Defamation under SDCL 20-11-2 includes libel and slander. Both libel and slander require false and unprivileged communications. SDCL 20-11-3, -4. "If a communication is 'privileged,' it is not actionable." *Kieser v. Se. Props.*, 1997 S.D. 87, ¶ 13, 566 N.W.2d 833, 837. Under SDCL 20-11-5(3):

> [a] privileged communication is one made: . . . (3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information[.]

Here, Dr. Hernandez does not ask this Court to reverse the court's ruling that Dr. Krall's communication was privileged. Once a communication is deemed privileged, the communication between those interested persons is protected unless made with malice. *Schwaiger v. Avera Queen of Peace*, 2006 S.D. 44, ¶ 9, 714 N.W.2d 874, 878.

But "malice cannot be inferred from the defamatory communication alone." *Id.* ¶ 10. The plaintiff must present evidence that the defendant "in fact entertained serious doubts as to the truth of his publications." *Id.* (quoting *Petersen v. Dacy*, 1996 S.D. 72, ¶ 8, 550 N.W.2d 91, 93). From our review of the record, the circuit court did not err when it granted Dr. Krall a judgment as a matter of law. Malice cannot be presumed, and Dr. Hernandez offered no evidence that Dr. Krall made the statements in reckless disregard of their truth or that he entertained serious doubts as to their truth.

[¶30.]    Affirmed.

[¶31.]    GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and KERN, Justices, concur.